229 N.J. Super. 593 (1989)
552 A.2d 232
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CESARIO MARTINEZ, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 4, 1988.
Decided January 13, 1989.
*595 Before Judges MICHELS, MUIR, Jr., and KEEFE.
*596 Marcia Blum, Assistant Deputy Public Defender, argued the cause for appellant (Alfred A. Slocum, Public Defender, attorney; Marcia Blum, of counsel and on the brief).
Robert E. Bonpietro, Deputy Attorney General, argued the cause for respondent (Cary Edwards, Attorney General of New Jersey, attorney; Robert E. Bonpietro, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Tried to a jury, defendant Cesario Martinez was found guilty in connection with the death of Ausberto "Hector" Rivera (Rivera) of reckless manslaughter, a crime of the second degree, in violation of N.J.S.A. 2C:11-4b, and possession of a weapon with the purpose to use it unlawfully against the person of another, a crime of the third degree, in violation of N.J.S.A. 2C:39-4d. The trial court merged defendant's conviction for possession of a weapon for an unlawful purpose into his conviction for manslaughter and committed him to the custody of the Commissioner of the Department of Corrections for a period of ten years, with a five-year period of parole ineligibility, and assessed a penalty of $25 payable to the Violent Crimes Compensation Board. This appeal followed.
According to the proofs, on the early afternoon of April 29, 1984, Rivera had been drinking, and was loitering outside of defendant's house, located at 63 Hills Place, Trenton. Hills Place is apparently an alley. When defendant walked outside to "get some fresh air," Rivera walked over to defendant and demanded that he hold his radio. Defendant took it and placed it on the ground. Rivera then demanded that defendant light a cigarette for him, which defendant refused to do. Rivera turned to defendant's uncle, Felipe Gonzales (Gonzales), who was sitting nearby, and said "look at the son of a bitch," referring to defendant. Defendant told Rivera that he was drunk and that he had better not look for any trouble. In *597 reference to an earlier incident, Rivera asked defendant why he had punched Gonzales in the eye. Defendant responded that Gonzales was his uncle and that the family dispute was none of his business. Rivera then asked defendant if he wanted to fight. Defendant told him that he was drunk and should go home.
Following his conversation with Rivera, defendant went inside his house and closed the front door. He saw his daughter hiding behind the sofa, but did not talk to her or ask her if or why she was frightened. He went into the kitchen, picked up a screwdriver and placed it in his pocket, and returned to the front door. According to defendant, he retrieved the screwdriver from the house "because I knew this guy wanted to fight me. I got it in case he had something in his pocket." Rivera was still standing outside of defendant's front door when defendant partially opened the door. Rivera again asked defendant if he wanted to fight. Defendant again told Rivera to go home, whereupon Rivera swung his radio at defendant, hitting the edge of the door.
Immediately defendant opened the door and swung his fist at Rivera. Rivera grabbed defendant by the hair as defendant attempted to strike him. The two struggled for "quite a while." Rivera hit defendant "a couple of times on top of the head." Defendant tried to strike Rivera with his fists but was unable to land any punches because Rivera was holding his head down by the hair. Ultimately, defendant reached into his pocket, pulled out the screwdriver and stabbed Rivera several times, inflicting fatal stab wounds to his heart and lung. Defendant later that day stated to police that, "even after I stabbed him, he kept fighting me."
When defendant's neighbor, Alfonso Ramos (Ramos), saw the two men fighting, he rushed over and eventually separated them. Ramos saw defendant strike Rivera once in the mouth as Rivera held him by the hair. As Ramos separated the two men, Rivera took a few steps backward and collapsed. Defendant *598 went back into his house and looked out from the second floor window.
The police officers who responded to the scene observed Rivera lying unconscious on his back in the middle of the street, about 12 to 15 feet from defendant's door. The victim was taken to St. Francis Hospital by Patrolmen Martucci and Ragazzo.
Shortly thereafter, defendant was questioned by police about the incident. Patrolman Forker noticed that defendant was quivering and shaking. When the patrolman asked him what was wrong, defendant replied that he had just gotten into a fight with the person who had been taken to the hospital. After Patrolman Forker advised him of his Miranda rights, defendant admitted that he had stabbed Rivera with a screwdriver and had thrown the screwdriver into the alley. Patrolman Forker placed defendant under arrest. The police found the screwdriver in the street near a telephone pole on the opposite side of Hills Place.
Defendant was taken to Trenton Police Headquarters where he was again read his Miranda rights. Defendant signed a form acknowledging that he understood those rights, and issued a statement. In the statement, defendant related the facts of the incident, and described the fatal conflict. Defendant stated that "[Rivera] grabbed me by the hair, then I reached in my pocket and got out the screwdriver. Then I stabbed the guy with it. I know I stabbed him at least one time. I felt it go into him."
Defendant admitted at trial that he had stabbed Rivera with the screwdriver, but claimed that he "just wanted to get [Rivera] off of me," and did not want to kill him. Defendant maintained that Rivera, during the argument outside before defendant picked up the screwdriver, had been putting his hand in his pocket, which led defendant to believe that Rivera might have "something" there. Defendant acknowledged, however, that Rivera never threatened him with any weapon.
*599 At the conclusion of the proofs, the jury found defendant guilty of reckless manslaughter and possession of a weapon for an unlawful purpose. This appeal followed.
Defendant seeks a reversal of his convictions and a remand for a new trial or, alternatively, a modification of his sentence on the following grounds set forth in his brief:
I. THE COURT'S INADEQUATE AND MISLEADING INSTRUCTION ON DEFENDANT'S IMMUNITY FROM THE DUTY TO RETREAT CONSTITUTES REVERSIBLE ERROR.
II. THE DEFENDANT WAS PREJUDICED BY THE COURT'S REFUSAL TO INSTRUCT ON THE DEFENSE OF OTHERS.
III. THE PROSECUTOR'S PREJUDICIAL STATEMENTS DURING SUMMATION, ENCOURAGING THE JURY TO DRAW A PROHIBITED INFERENCE, VIOLATED DEFENDANT'S STATE AND FEDERAL CONSTITUTIONAL RIGHT TO A FAIR TRIAL AND EVIDENCE RULE 55 AND REQUIRE REVERSAL.
IV. THE VERDICT IS AGAINST THE WEIGHT OF THE EVIDENCE (Raised as Plain Error).
V. THE COURT'S INSTRUCTION ON THE CHARGE OF POSSESSION OF A WEAPON FOR AN UNLAWFUL PURPOSE CONSTITUTES REVERSIBLE ERROR. (Raised as Plain Error).
VI. THE COURT INFRINGED DEFENDANT'S STATE AND FEDERAL CONSTITUTIONAL RIGHT TO A FAIR TRIAL WHEN IT REFUSED TO ASK HIS PROPOSED QUESTIONS OF POTENTIAL JURORS.
VII. THE TRIAL COURT'S SENTENCING FINDINGS ARE NOT SUPPORTED BY THE EVIDENCE AND ITS SENTENCING DECISION MUST SHOCK THE JUDICIAL CONSCIENCE.

I.
First, we are satisfied that the trial court did not err by refusing to instruct the jury on the justification of defense of another. The thrust of defendant's argument that the homicide was justified is grounded in his claim that he "was scared [Rivera] was going in the house, the way he was acting," and that he used deadly force in defense of his five-year old daughter, who was hiding behind the furniture in the house at the time of the assault. The trial court denied defendant's request for a jury instruction as to defense of another, concluding that nothing in the evidence supported such a charge since *600 the "dispute [was] between the defendant and Mr. Rivera and nobody else was involved." We agree.
The justification of defense of another is codified in N.J.S.A. 2C:3-5, which, in pertinent part, provides:
a. Subject to the provisions of this section and of section 2C:3-9, the use of force upon or toward the person of another is justifiable to protect a third person when:
(1) The actor would be justified under section 2C:3-4 in using such force to protect himself against the injury he believes to be threatened to the person whom he seeks to protect; and
(2) Under the circumstances as the actor reasonably believes them to be, the person whom he seeks to protect would be justified in using such protective force; and
(3) The actor reasonably believes that his intervention is necessary for the protection of such other person.
When coming to the defense of another, the test for determining one's criminal responsibility has a very limited subjective component. The test was spelled out in State v. Fair, 45 N.J. 77 (1965):
[T]he test of whether a party may intervene in defense of a third person [is] determined by the subjective intent of the intervener, subject only to the qualification that a jury objectively find that he reasonably arrived at the conclusion that the apparent victim was in peril, and that the force he used was necessary. Thus, the so-called "reasonable mistake of fact" doctrine is given its due, both as to the amount of force and the initial lawfulness of the intervention.... [Fair, 45 N.J. at 92-93].
See also State v. Moore, 178 N.J. Super. 417, 425-426 (App.Div. 1981), certif. den., 87 N.J. 406 (1981).
Although the burden of disproving the justification of defense of another is upon the State, there must be enough evidence to support its application. See State v. Holmes, 208 N.J. Super. 480, 488 (App.Div. 1986). See also State v. Gardner, 51 N.J. 444, 456 (1968); State v. Burks, 208 N.J. Super. 595, 604 (App.Div. 1986). Specifically, the record must provide a rational basis upon which the jury could find that defendant acted in the defense of another. See State v. Crisantos (Arriagas), 102 N.J. 265, 278 (1986); State v. Choice, 98 N.J. 295, 298-299 (1985); State v. Powell, 84 N.J. 305, 316 n. 12 (1980); State v. Hollander, 201 N.J. Super. 453, 473 (App.Div. 1985), *601 certif. den., 101 N.J. 335 (1985). This standard is employed in determining whether the trial court should charge a lesser included offense and, in our view, by analogy, is applicable in determining whether to charge concerning a defense theory.
Consequently, we are convinced from our review of the record that the evidence could not support a charge concerning the justification of defense of another within the meaning and intent of N.J.S.A. 2C:3-5. The justification of defense of another applies where one acts to help another in distress. The altercation here, however, involved only defendant and Rivera. Contrary to his assertion, defendant clearly was not intervening in an attack upon his daughter. The trial court, therefore, properly denied defendant's request to charge with respect to this defense.

II.
We are satisfied, however, that the trial court failed to properly instruct the jury with respect to an exception to the duty to retreat. Defendant contends that, in its instruction to the jury, the trial court should have explained not only that one has no duty to retreat from one's dwelling, but that a "dwelling" encompasses a doorway, threshold, porch or other similar appurtenance.
The present rules governing the use of force in self-defense are set out in the justification section of the New Jersey Code of Criminal Justice. See N.J.S.A. 2C:3-4. The use of force against another in self-defense is justifiable "when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." N.J.S.A. 2C:3-4a. When deadly force is used by the actor a further limitation exists. That is, deadly force is not justifiable "unless the actor reasonably believes that such force is necessary to protect himself against death or serious bodily harm...." N.J.S.A. 2C:3-4b(2). Moreover, deadly force is not *602 justifiable if "[t]he actor knows that he can avoid the necessity of using such force with complete safety by retreating...." N.J.S.A. 2C:3-4b(2)(b). An exception to this doctrine of retreat, however, is that no duty to retreat is imposed upon a person who, free from fault in bringing on a difficulty, is attacked at or in his dwelling house. N.J.S.A. 2C:3-4b(2)(b)(i); State v. Bonano, 59 N.J. 515, 518-519 (1971).
The trial court instructed the jury as follows:
Does the defendant have a duty or obligation to retreat? The use of deadly force is not justifiable under this statute if the defendant knows that he can avoid the necessity of using such force with complete safety by retreating.
* * * * * * * *
Specifically, one who is attacked may hold his ground and resist that attack, but he may not resort to the use of deadly force, that is, force which he knows will the [sic] create a substantial risk of causing death or serious bodily harm if an opportunity to retreat with complete safety is available to him and he is consciously aware of that fact.
If you determine that the defendant resorted to the use of deadly force, you must then determine whether he knew, that is, he was aware that an opportunity to retreat with complete safety was available to him. In making this determination, you should take into consideration the total circumstances presented by the evidence including the attendant excitement at the time and place in question.
There is an exception to this rule, however. The exception is that a man need not retreat when attacked in his own dwelling house. A man is generally not bound to retreat from his house. He may stand his ground and resist an attack even to the extent of employing deadly force if he reasonably believes he is in danger of losing his life or suffering serious bodily harm.
I further instruct you that the burden is upon the State to prove beyond a reasonable doubt that the defense of self protection or self defense is untrue. And hence, there must be an acquittal of the defendant if there is a reasonable doubt in your mind as to whether he acted in self protection or self defense within the definition of that defense as I have set it forth during the course of these instructions.
Further, with regard to the issue of retreat, if the State proves beyond a reasonable doubt that the defendant who resorted to deadly force knew that he could have retreated with complete safety, then in that situation the use of deadly force is not justifiable under the law with the exception that I explained to the effect that a man need not retreat when attacked in his own dwelling house.
Members of the jury, the burden is upon the State to prove beyond a reasonable doubt that the defendant knew he could have retreated with complete *603 safety, and if a reasonable doubt regarding this issue should exist in your minds, then the issue of retreat must be resolved in favor of the defendant.
Defendant objected to the charge because the instructions did not contain language regarding the exception from the duty to retreat where an actor is attacked at the threshold of his home. Defendant sought the following instruction:
... you are also instructed that one has no duty to retreat from his own home and may stand his ground and repel an attempt by the assailant to enter or commit a crime therein. The defendant may, under our law, meet the assailant at the threshold of the home and prevent him from entering by any means, including deadly force. Under such circumstances, the homicide is justified and the defendant would be entitled to an acquittal.
In State v. Bonano, supra, the Supreme Court was confronted with the issue of "whether, and under what circumstances, a man must retreat when confronted by an assailant, before he may justifiably kill another in his own defense." Id. 59 N.J. at 518. The Court adhered to the "well nigh universal rule" that a man is not bound to retreat from his dwelling house. Id. at 519. Moreover, the Court held that "[a] porch or other similar physical appurtenance is deemed to come within this concept." Id. at 520. In Bonano, the Court concluded that the defendant was entitled to a charge to the effect that if the defendant was standing at his own doorway when the victim approached, drew a knife and threatened to kill the defendant, and if the defendant reasonably believed he was in danger of losing his life or suffering serious bodily harm, then the defendant was under no duty to retreat but might stand his ground and resist the attack even to the extent of employing deadly force. Id. at 521.
Here, although the trial court instructed the jury that "a man need not retreat when attacked in his own dwelling house," the trial court did not charge that a dwelling house would include "a porch or other similar appurtenance." (See the Model Jury Charge, § 3.280). Although defendant did not specifically request that the trial court define "dwelling" as including "a porch or similar appurtenance," defendant requested that the jury be charged that defendant could "meet the assailant at the threshold of the home and prevent him from entering by any *604 means, including deadly force." Similar language, from Clark & Marshall, Law of Crimes (7th Ed.) Sec. 7.03, p. 493, was cited with approval in State v. Bonano, 59 N.J. at 519. Defendant's request to charge and the model charge both have the effect of conveying to the jury that the threshold of a house, or a porch or other similar appurtenance, is considered part of the dwelling house. Consequently, a person confronted by an attacker in this area need not retreat before justifiably using deadly force in his defense.
The evidence adduced at trial shows that defendant was standing in his own doorway or right in front of the door when the "attack" commenced. Defendant testified that he was holding the front door half-open when Rivera swung his radio at him. Moreover, defendant maintained that immediately after Rivera's radio smashed against the door, he went outside "right in front of the door" and attempted to strike Rivera. It was there that Rivera grabbed him by the hair and defendant drew his screwdriver and stabbed Rivera.
It is clear that whether or not defendant was required to retreat in this situation was dependent, in part, upon whether the jury believed that defendant was in or at his dwelling house when he employed deadly force in self-protection. In failing to instruct the jury that a dwelling house includes "a porch or similar appurtenance" or that a defendant may "meet the assailant at the threshold of the home and prevent him from entering by any means," the trial court may have led the jury to believe that defendant had a duty to retreat and, therefore, his use of deadly force was not justifiable when, in fact, the jury could properly have concluded that no such duty to retreat existed.
Consequently, the trial court erred in failing to instruct the jury that a dwelling house includes a porch or similar appurtenance, or other language to that effect.

*605 III.
Defendant also contends, for the first time on appeal, that the trial court's instruction to the jury on the charge of possession of a weapon for an unlawful purpose, in conjunction with the trial court's charge on self-defense, misled the jury into believing that, in order to acquit defendant of possession for an unlawful purpose, they had to first find that defendant acted in self-defense.
The trial court's charge to the jury must be examined as a whole in order to determine its overall effect. State v. Wilbely, 63 N.J. 420, 422 (1973). Moreover, it must be determined whether the charge constituted plain error since there was no objection interposed by defendant to the charge in this case. In fact, the trial court instructed the jury in accordance with defendant's request. The test for plain error related to a jury charge is whether in the circumstances "the error possessed a clear capacity for producing an unjust result." State v. Czachor, 82 N.J. 392, 402 (1980) (quoting State v. Melvin, 65 N.J. 1, 18 (1974)).
At trial, defense counsel requested a charge consistent with our decision in State v. Harmon, 203 N.J. Super. 216 (App.Div. 1985), rev'd, 104 N.J. 189 (1986), that self-defense was a defense to possession of a weapon for an unlawful purpose. The trial court accordingly instructed the jury that self-defense was a complete defense to all charges in the indictment, including possession of a weapon for an unlawful purpose. The trial court further charged on the elements of possession of a weapon for an unlawful purpose. The pertinent provisions of the charge read:
Now, the statute reads in pertinent part as follows: Any person who has in his possession any weapon with a purpose to use the same unlawfully against the person or property of another is guilty of a crime.
In order to convict the defendant of this charge, the State has the burden of proving beyond a reasonable doubt each of the following elements of this crime: One, that exhibit S-7b, the screwdriver, is a weapon; two, that the defendant *606 possessed the screwdriver; three, that the defendant possessed the screwdriver with the purpose to use it unlawfully against a person, to wit, Hector Rivera.
A weapon is anything readily capable of lethal use or of inflicting serious bodily injury. Ordinarily, a screwdriver is not a weapon, nor is its possession against the law. Many objects have innocent uses. However, when a person possesses an object with the purpose of using it unlawfully against another person, the possession of that object becomes a criminal offense.
* * * * * * * *
Now, self defense is a complete defense to the charges of murder, possession of a weapon for an unlawful purpose, and the lesser included offenses which I shall be charging to you in a few minutes. If you find that the State has failed to prove beyond a reasonable doubt that self defense does not exist, then the case is over and you should find the defendant not guilty.
Following defendant's conviction and during the pendency of this appeal, the Supreme Court reversed our decision in State v. Harmon, supra. Defendant now contends that the Supreme Court's ruling in Harmon mandates a reversal of his conviction for possession of a weapon for an unlawful purpose and a remand for a new trial. Resolution of this issue requires a critical analysis of the Supreme Court's opinion in Harmon.
The Supreme Court's opinion in Harmon focused on whether the supplemental jury instruction had the effect of misleading the jury regarding the proper mental state required for the offense, that is, "whether the purpose of the possession was unlawful," not whether the possession was unlawful. Id. at 196. For, under N.J.S.A. 2C:39-4a, "purpose to use [a weapon] unlawfully" requires proof not only that the accused intended to use the weapon, but that he intended to use it to accomplish a criminal purpose. In reversing defendant's conviction, the Supreme Court noted that it is "misleading ... to be focusing upon whether the defendant was acting in self defense when the issue is whether he was affirmatively acting with the intent to commit a crime." Id. at 210. The Supreme Court rejected the State's argument that because defendant armed himself in advance of the altercation, he cannot be heard to claim that he had no criminal purpose under N.J.S.A. 2C:39-4. The Supreme Court explained that:

*607 If an individual's possession of a firearm is motivated honestly by a self-protective purpose, then his conscious object and design may remain not to do an unlawful act, and a material element of a 39-4(a) violation has not been met. The "justification" of self defense under section 39-4(a) thus becomes irrelevant because no crime under section 39-4(a) has been committed; there is nothing to justify. Conversely, if the accused indeed carries a firearm with the "purpose to use it unlawfully," he cannot, at the same time, be motivated by a "reasonabl[e] belie[f]" that the gun is "immediately necessary for the purpose of protecting himself * * *." N.J.S.A. 2C:3-4(a). Obviously, the definition of the crime under section 39-4(a) necessarily precludes such a belief.
* * * * * * * *
[I]f the accused's honest purpose in possessing and in continuing to possess a weapon is to use it for sport, precaution, or in a manner intended to cause no harm to another, then he may present that defense to the jury to counter the charge that he is guilty of possession for an unlawful purpose, principles of justifiable use notwithstanding. [104 N.J. at 207, 211 (footnote omitted)].
Defendant here maintains that Harmon mandates a reversal of his conviction because the trial court's instruction "confuses [his] purpose in possessing the weapon and his ultimate use of the instrument." The critical inquiry, therefore, is whether, under the circumstances, the charge was clearly capable of misleading the jury as to the state of mind essential to a finding that defendant had a purpose to use the screwdriver unlawfully against Rivera. See Harmon, 104 N.J. at 213.
Defendant testified that he armed himself with a screwdriver because he believed that Rivera wanted some trouble. Although the trial court properly instructed the jury that the State had to prove beyond a reasonable doubt that "defendant possessed the screwdriver with the purpose to use it unlawfully against ... Rivera," defendant was entitled to have the jury instructed that possession of a weapon for a precautionary purpose is not a violation of N.J.S.A. 2C:39-4d, and that a finding of an unlawful use of the weapon would not establish that his purpose in arming himself was to commit an unlawful act. Harmon, supra, 104 N.J. at 211. The proper inquiry for the jury was not whether the defendant was justified in the use of the weapon, but rather whether his purpose in possessing the weapon was to commit an unlawful act. Since the trial court did not properly instruct the jury with respect to this *608 offense, defendant's conviction must be reversed and the matter remanded for a new trial in accordance with the principles enunciated in the opinion of the Supreme Court in State v. Harmon.
In view of our decision to reverse and remand the matter for a new trial on both charges, we need not consider the other issues raised on this appeal, including defendant's challenge to the sentence.
Accordingly, defendant's convictions and the sentence imposed thereon are reversed and the matter is remanded for a new trial in accordance with the views expressed in this opinion.