288 N.J. Super. 27 (1996)
671 A.2d 1058
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JERMAINE BRYANT, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 30, 1996.
Decided February 27, 1996.
*30 Before Judges MICHELS, BAIME, and KIMMELMAN.
Stephen W. Kirsch, Assistant Deputy Public Defender, argued the cause for appellant (Susan L. Reisner, Public Defender, attorney; Mr. Kirsch, of counsel and on the brief).
*31 Barbara A. Rosenkrans, Assistant Essex County Prosecutor, argued the cause for respondent (Clifford J. Minor, Prosecutor, attorney; Ms. Rosenkrans, of counsel and on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
Following a protracted jury trial, defendant was found guilty of murder (N.J.S.A. 2C:11-3a(1) and (2)), aggravated assault (N.J.S.A. 2C:12-1b(1)), possession of a firearm for an unlawful purpose (N.J.S.A. 2C:39-4a), and possession of a rifle without a permit (N.J.S.A. 2C:39-5c(1)). The trial court sentenced defendant to life imprisonment with a thirty year parole disqualifier on the conviction for murder, to a consecutive ten year term with a five year parole disqualifier on the conviction for aggravated assault, and to a concurrent five year term on the conviction for possession of a rifle without a permit. The trial court merged the conviction for possession of a firearm for an unlawful purpose with the murder conviction. Defendant was assessed the applicable penalties.
On appeal, defendant contends (1) the trial court committed plain error in its instructions regarding self-defense, (2) the judge's charge on possession of a firearm for an unlawful purpose failed to apprise the jury of the right to carry a weapon for self-protection, and (3) the sentences imposed were manifestly excessive. We find no sound basis to disturb defendant's convictions or the sentences imposed.

I.
The facts were hotly contested at trial. On November 11, 1992, Michael and Mitchell Saunders visited their uncle, Charles, at his Newark apartment. In the course of their conversation, Charles, who was superintendent of the apartment building, mentioned that he had been having problems with defendant. Defendant, who was then sixteen years old, resided in the building with his mother, Mary Manigo.
*32 Following their visit, the Saunders brothers confronted defendant, who was standing in the front of the building. Defendant responded that he had no difficulty with Charles. He then left the two men, entered his apartment, and returned with his mother, who stopped a passing police car. The police officer told Charles to direct his nephews to leave. Believing that the argument had been defused, the officer then departed.
Shortly after the police officer left the scene, a fistfight erupted between Clarence Roundtree, a friend of defendant, and the Saunders brothers. It was undisputed that the fight ended quickly and inconclusively.
During the altercation, defendant entered his apartment and emerged with a rifle. From the landing in front of the apartment building, defendant fired at least one shot in the air, at which point the gun jammed. While defendant attempted to engage the trigger mechanism, Roundtree took the rifle from him and pointed it at the Saunders brothers. Roundtree unsuccessfully attempted to fire the weapon. Defendant then grabbed the rifle from Roundtree's hands and fired at least one more shot in the air.
The State's witnesses gave sharply differing accounts concerning what happened next. Michael Saunders testified that he and his brother ran to their car and attempted to enter it. While running to the car, Mitchell reached his hands into his pants pockets to remove his car keys. As Mitchell was opening the driver's door, defendant shot him in the chest. The bullet pierced his heart and aorta and caused his chest cavity to fill with blood, ultimately killing him. Upon seeing his brother fall, Michael ran around the car in an effort to reach his uncle's apartment. As Michael passed the car door, defendant shot him once in the shoulder, the bullet piercing his lung. Defendant then fled from the scene. The police were immediately summoned, and both victims were transported to the hospital. In a statement given in the emergency room, Michael recounted that his brother had been running toward the defendant when he was shot and that the two had been involved in an ongoing dispute.
*33 Diamond Burchett, who lived next door, largely corroborated Michael's account of the shooting, although he never saw Roundtree with the weapon. He did state, however, that when the gun jammed, one of the Saunders brothers remarked to defendant that he was not "shooting nothing but blanks." Burchett also testified that one of the Saunders brothers was moving toward defendant when he was shot.
Mary Manigo testified that after defendant had retrieved the gun, he fired several warning shots in the air. She claimed that, notwithstanding these shots, the victims continued to approach defendant while reaching into their pants pockets. In the witness's words, the Saunders brothers "kept walking like zombies[,] like they couldn't be touched" by bullets. According to Manigo, defendant shot Michael first in the shoulder, and then Roundtree grabbed the gun and killed Mitchell.

II.
We first consider defendant's argument that the trial court committed plain error in its instructions on the justification of self-defense. Defendant contends that the trial court's instructions (1) misinformed the jury respecting the right to use deadly force for self-protection, (2) failed to apprise the jury of the relationship between the justifications of self-defense and defense of others, and (3) foreclosed the jury from considering self-defense in the course of determining defendant's guilt or innocence of the substantive charges. Our examination of the trial court's instructions discloses no error capable of producing an unjust result. R. 2:10-2.

A.
Because defendant's contentions are somewhat prolix, we begin our analysis with a brief description of our statutes and cases dealing with the justifications of self-defense and defense of others.
*34 The use of force against a person in self-defense is justifiable "when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force" by that person. N.J.S.A. 2C:3-4a. The defendant must harbor an actual, reasonable belief that the use of force on his own part is necessary to prevent the imminent application of unlawful force by the assailant. State v. Kelly, 97 N.J. 178, 199-200, 478 A.2d 364 (1984). The doctrine of self-defense exonerates a person from criminal liability even though his belief in the need to use force to repel an attack is later proven mistaken. Id. at 198, 478 A.2d 364. "Detached reflection cannot be demanded in the presence of an uplifted knife," Brown v. United States, 256 U.S. 335, 343, 41 S.Ct. 501, 502, 65 L.Ed. 961, 963 (1921), and the law thus recognizes the frailties of human perception, requiring only a reasonable, and not necessarily correct, judgment. See State v. Hipplewith, 33 N.J. 300, 316-17, 164 A.2d 481 (1960); State v. Mount, 73 N.J.L. 582, 585-86, 64 A. 124 (E. & A. 1906). While it is not requisite that actual necessity exist, the justification of self-defense requires an honest belief on the part of the defendant in the need to use force. State v. Kelly, 97 N.J. at 198, 478 A.2d 364. Honesty, alone, however, does not suffice. A defendant claiming the privilege of self-defense must also establish that his belief in the need to use force was reasonable. Id. at 199, 478 A.2d 364. The reasonableness of the defendant's belief is to be determined by the jury using an objective standard of what a reasonable person would have done in defendant's position in light of the circumstances known to defendant at the time the force was used. Id. at 199-200, 478 A.2d 364.
Further, the defendant may use deadly force in self-defense only if he "reasonably believes that such force is necessary to protect himself against death or serious bodily harm." N.J.S.A. 2C:3-4b(2). Two additional limitations on the use of deadly force exist. First, the defendant may not use deadly force if he, "with the purpose of causing death or serious bodily harm, provoked the use of force against himself in the same encounter." N.J.S.A. 2C:3-4b(2)(a). Second, the defendant may not use such force if he *35 "knows that he can avoid the necessity of using such force with complete safety by retreating...." N.J.S.A. 2C:3-4b(2)(b). Deadly force is defined as "force which the actor uses with the purpose of causing or which he knows to create a substantial risk of causing death or serious bodily harm." N.J.S.A. 2C:3-11b. This definition encompasses the act of "[p]urposely firing a firearm in the direction of another person." Ibid.
A defendant is justified in using force to defend another person when:
(1) The [defendant] would be justified under section 2C:3-4 in using such force to protect himself against the injury he believes to be threatened to the person whom he seeks to protect; and
(2) Under the circumstances as the [defendant] reasonably believes them to be, the person whom he seeks to protect would be justified in using such protective force; and
(3) The [defendant] reasonably believes that his intervention is necessary for the protection of such other person.
[N.J.S.A. 2C:3-5a]. Whether the person the defendant seeks to protect was actually the aggressor in the situation is irrelevant if unknown to the defendant. The defense is valid if the defendant reasonably believed both that the person he sought to aid was unlawfully attacked and that the force used was necessary to protect that person from the attack. State v. Martinez, 229 N.J. Super. 593, 600, 552 A.2d 232 (App.Div. 1989); see also State v. Fair, 45 N.J. 77, 92-93, 211 A.2d 359 (1965). Again, the reasonableness of the defendant's belief is judged from the perspective of a reasonable person in defendant's position under the circumstances existing at the time he intervened. See State v. Holmes, 208 N.J. Super. 480, 486-88, 506 A.2d 366 (App.Div. 1986).
The trial court must charge the jury on self-defense and defense of another if there exists evidence in either the State's or the defendant's case sufficient to provide a "rational basis" for their applicability. State v. Martinez, 229 N.J. Super. at 600, 552 A.2d 232; see also State v. Kelly, 97 N.J. at 200, 478 A.2d 364. If such a rational basis exists, then the State is required to prove that the defendant did not act in either self-defense or defense of *36 another beyond a reasonable doubt. State v. Kelly, 97 N.J. at 200, 478 A.2d 364; State v. Martinez, 229 N.J. Super. at 600, 552 A.2d 232.
The trial court's instructions in the present case fully comported with these principles, as defendant fairly concedes. Indeed, the instructions as given tracked the model charge. Defendant argues, however, that an instruction that is appropriate in one case may not be sufficient for another, and that the trial court's charge here was not molded in such a way as to properly explain the law to the jury in the context of the material facts of the case. State v. Concepcion, 111 N.J. 373, 379, 545 A.2d 119 (1988).

B.
It is first argued that the trial court erred by telling the jury that "[t]he force used by the defendant must not be significantly greater than and must be proportionate to the unlawful force threatened or used against [him]," and that the justification of self-defense would not lie if the force used by the defendant was "disproportionate in its intensity." Pointing to N.J.S.A. 2C:3-4b(2), defendant contends that a person may use deadly force if he "reasonably believes that such force is necessary to protect himself against death or serious bodily harm" even if his use of deadly force is disproportionate to the threat leveled against him. As we understand defendant's contention, he asserts that a person who perceives himself threatened with death or serious bodily harm may use deadly force even though other means are readily available to repel the attack upon him. He thus claims that the trial court erred by introducing the concept of "proportionality" in the context of the use of deadly force.
We question the thesis that a person may use deadly force whenever he perceives himself threatened with death or serious bodily harm where means short of the use of such force are readily at hand to repel such a threat. "Self-defense is measured against necessity." State v. Abbott, 36 N.J. 63, 69, 174 A.2d 881 (1961). A cogent argument can be made that deadly *37 force may not be used where there is no need for its use. Moreover, defendant's argument suffers from some degree of circularity. As we have stressed, the right to use deadly force rests on the defendant's reasonable belief in the need to use such force. Where a lesser degree of force would have sufficed to repel an attack, it seems incongruous to suggest that the actor reasonably believed he was threatened with death or serious bodily harm. In other words, if the circumstances of the attack indicate that the defendant could not reasonably have believed that he needed to employ the amount of force used, then he cannot invoke the defense. See Cannel, New Jersey Criminal Code Annotated, comment 9 on N.J.S.A. 2C:3-4 (1995).
But even if one could conjure up facts where the deadly force legitimately used by a defendant threatened with death or serious bodily harm might be considered "disproportionate" in its intensity, we would not reverse defendant's conviction. The instructions, read in their entirety, fairly conveyed the principle that the defendant was to be acquitted if the jury determined he used deadly force in the reasonable belief that such force was necessary to protect himself against death or serious bodily harm at the hands of the Saunders brothers. Defendant neither submitted a request to charge nor interposed an objection to the court's instructions. We are entirely satisfied that defendant was not prejudiced by the instructions given.

C.
Defendant also attacks the portion of the trial court's charge dealing with provocation. In accord with the principles of the model charge, the trial court explained to the jury that "[i]f you find that the defendant, with the purpose of causing death or serious bodily harm to another, provoked or incited the use of force against himself in the same encounter, then the defense [of self-defense] is not available to him." As this court has noted consistently, "self-defense is only available to one who is without fault," and a person "who provokes or initiates an assault cannot *38 escape criminal liability by invoking self-defense as a defense to a prosecution arising from the injury done to another." State v. Rivers, 252 N.J. Super. 142, 149, 599 A.2d 558 (App.Div. 1991). While conceding that the trial court's instruction was a correct statement of the law, defendant claims that it was prejudicial in the context of the facts presented. Specifically, he asserts that his initial use of the rifle was justified by the need to protect Roundtree, but that the jury, under the instructions as given, could have considered his firing warning shots as "provocation," thus disqualifying him from asserting the justification of self-defense.
We reject this contention. If, as defendant claims, his initial brandishing and firing of the rifle was necessary to protect Roundtree from attack, the jury would have considered this conduct as privileged under the trial court's charge on the justification of defense of others. "A threat to cause death or serious bodily harm, by the production of a weapon or otherwise" is justified "so long as the actor's purpose is limited to creating an apprehension" that such force will be used "if necessary." N.J.S.A. 2C:3-11b. It has thus been said that our statutes "permit[] an individual to display or brandish a firearm or other weapon when the need for self-protection [or protection of another] is reasonably perceived and he merely intends to create an apprehension in the aggressor that he will use deadly force if necessary." State v. Harmon, 203 N.J. Super. 216, 223, 496 A.2d 707 (App.Div. 1985), rev'd on other grounds, 104 N.J. 189, 516 A.2d 1047 (1986). While the trial court's charge on the defense of others did not specifically refer to these principles, it clearly conveyed the idea that, if defendant's initial use of the rifle to fire warning shots was perceived by defendant as reasonably necessary to protect Roundtree, such conduct was privileged and could not result in criminal liability. Moreover, if, as defendant now contends, he fired warning shots in order to protect Roundtree, then his use of the weapon could not have been "with the purpose of causing death or serious bodily harm," a precondition for a *39 finding of provocation under N.J.S.A. 2C:3-4b(2)(a). Under the charge as given, the jury was told that provocation would disqualify the defendant from invoking self-defense only if the defendant acted "with the purpose of causing death or serious bodily harm to another." This charge fairly conveyed the applicable legal principle.[1]
Although in retrospect perhaps it would have been preferable had the trial court explicitly told the jury that conduct found to be reasonably necessary to protect a third person could not be considered provocation precluding the actor from relying on the justification of self-defense, we are satisfied that defendant was *40 not prejudiced. Defense counsel's failure to submit a request to charge or to interpose an objection signifies that he was satisfied with the instructions as given. We are convinced that the jury was not misled.

D.
Citing State v. Coyle, 119 N.J. 194, 574 A.2d 951 (1990), defendant claims that the trial court committed plain error by failing to refer to the justifications of self-defense and defense of others in its instructions on the elements of murder. Defendant's reliance on Coyle is clearly misplaced. In Coyle, our Supreme Court found defective an instruction that foreclosed the jury from considering passion/provocation manslaughter "unless it determined that the State had failed to prove beyond a reasonable doubt the offense of murder." Id. at 222, 574 A.2d 951. The jury here was not told to disregard evidence of justification if it found the State had proven the statutory elements of murder. To the contrary, the trial court's charge clearly indicated to the jury that it was to acquit defendant if it harbored a reasonable doubt that the killing was justified by self-defense or defense of others. We perceive no error  far less plain error. Cf. State v. Harris, 141 N.J. 525, 556, 662 A.2d 333 (1995).

III.
Defendant's remaining arguments do not require extended discussion. We need not address defendant's attack upon the trial court's charge on possession of a firearm for an unlawful purpose. Although defendant was found guilty on that count, the conviction was merged. No prejudice resulted.
We find no basis to disturb defendant's sentences. The sentencing court's articulation of reasons satisfied the three-pronged test adopted in State v. Roth, 95 N.J. 334, 363-64, 471 A.2d 370 (1984). See also State v. Jarbath, 114 N.J. 394, 401, 555 A.2d 559 (1989). The cumulative nature of the sentence comports with the guidelines established in State v. Yarbough, 100 N.J. 627, 643-44, *41 498 A.2d 1239 (1985), cert. denied, 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986).
Affirmed.
NOTES
[1] Legal commentators have suggested that the standard spelled out in N.J.S.A. 2C:3-4b(2)(a), which provides that the use of deadly force is not justifiable if the defendant, "with the purpose of causing death or serious bodily harm, provoked the use of force against himself in the same encounter," differs from the "without fault" standard described in several of our decisions. State v. Rivers, 252 N.J. Super. at 149, 599 A.2d 558. The legislative history reveals an intent on the part of the Criminal Code's drafters to adopt a rule that involves a "narrower forfeiture of the privilege" than the "without fault" standard. See Cannel, New Jersey Criminal Code Annotated, comment 11 on N.J.S.A. 2C:3-4 (1995) (quoting 1971 Commentary, par. 10); but see State v. Bowens, 108 N.J. 622, 628, 532 A.2d 215 (1987) ("An aggressor faced even with the reasonable belief in the necessity to kill `cannot have the defense of self-defense, for that requires both freedom from fault in the inception of the difficulty and the entertainment of beliefs which are reasonable.'") (quoting W. LaFave and A. Scott, Jr., Handbook on Criminal Law 583 (1972)); State v. Rivers, 252 N.J. Super. at 149-50, 599 A.2d 558 (citing the statutory language quoted above). The Code Commentary indicates that a defendant is not necessarily disqualified from advancing the justification of self-defense merely because he provoked the attack. Cannel, New Jersey Criminal Code Annotated, comment 11 on N.J.S.A. 2C:3-4 (1995) (quoting 1971 Commentary, par 10). The defendant is disqualified from raising self defense only if he went "into the fight with a positive purpose to seriously injure or kill the victim," thus provoking the attack upon him. Ibid. In light of the fact that the court below instructed the jury in accordance with the more restrictive statutory language, there is no need for an extended discussion of the differing implications of the two rules or for a determination of which one correctly expresses the state of the law. We merely note that the shorthand references to the "without fault" standard that appear in our earlier decisions must be considered within the context of the statutory language of N.J.S.A. 2C:3-4b(2)(a).