**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2799-18

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

CHINUA S. ANDERSON,
a/k/a MOSHE-ACHIBE
Y BENYIMIN BEN IRA,
and X UNIVERSAL,

      Defendant-Appellant.

_____

Submitted January 11, 2021 – Decided February 12, 2021

Before Judges Sabatino and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 11-10-1720.

Joseph E. Krakora, Public Defender, attorney for appellant (Charles H. Landesman, Designated Counsel, on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Lillian Kayed, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant appeals from the November 26, 2018 Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. For the reasons that follow, we affirm.

Following a jury trial, defendant was convicted of murder and related weapons offenses stemming from the fatal stabbing of George Jamison during a violent encounter at a liquor store on May 2, 2011.[1] Defendant was sentenced on April 30, 2014, to an aggregate term of thirty years' imprisonment, with a thirty-year period of parole ineligibility. Defendant appealed his convictions and sentence, and we affirmed in an unpublished opinion. State v. Anderson, No. A-4654-13 (App. Div. June 8, 2017) (slip op. at 2). The Supreme Court later denied defendant's petition for certification. State v. Anderson, 231 N.J. 522 (2017).

The proofs and procedural history underlying defendant's convictions are set forth in our unpublished opinion and need not be repeated at length here.

---

[1] After the jury found defendant guilty of murder, N.J.S.A. 2C:11-3(a)(1) and (2), third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d), and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d), defendant entered a negotiated guilty plea to certain persons not to have weapons, N.J.S.A. 2C:39-7(b), arising from the same incident.

A-2799-18

See Anderson, slip op. at 2-8. In our opinion, we recounted that the stabbing was captured on the liquor store's security cameras and depicted a man, later identified as defendant, "persistently and aggressively pursuing and lunging at the unarmed victim as the victim persistently attempted to retreat from and avoid defendant's attack."[2] Id. at 21. "An autopsy revealed the victim [was] stabbed nine times." Id. at 3. The day after the stabbing, detectives stopped defendant on the street because he matched the description of the assailant depicted in the surveillance video and arrested him upon observing "a knife blade protruding from [his] . . . pocket." Id. at 5. Forensic analysis "linked a DNA stain on the blade [of the seized knife] to the victim and a DNA stain on the handle to defendant." Id. at 6. Additionally, a subsequent search warrant executed at defendant's residence recovered a jacket that "appeared to contain bloodstains" and "a messenger bag matching the one" worn by the assailant "depicted in the liquor store's video surveillance." Id. at 5.

Defendant testified at trial and refuted his prior account to detectives that "he was at a [different] store with his wife" at the time in question. Ibid. Instead, he "admitted that he was the individual on the liquor store's security footage" and "admitted to stabbing the victim multiple times." Id. at 8. However,

---

[2] Our review of the surveillance video confirms this account.

A-2799-18

defendant claimed he acted in self-defense when the victim, a complete stranger armed with "a metallic object," attacked him without warning. Id. at 7-8. According to defendant, "[i]n response, [he] grabbed his knife and swung it at the victim in an attempt to disarm him."[3] Id. at 7. Although defendant "admitted, in hindsight, he could have escaped without stabbing the victim," he "did not believe he caused any injuries to the victim at that time, nor did he hear the victim cry out in pain." Id. at 8.

We described the State's proofs as "a considerable quantum of evidence" establishing "defendant was the man who repeatedly stabbed the victim." Id. at 20. In contrast,

> [d]efendant's credibility was impeached not only by his initial denials to police that he was not the man in the surveillance video, but also by the surveillance video itself . . . . One might aptly characterize defendant's self-defense testimony and argument to the jury as "don't believe your lyin eyes." Defendant's testimony concerning why he pursued the victim into the store bordered on frivolity. In short, defendant's testimony was manifestly incredible.
>
> [Id. at 21.]

"In his summation, defense counsel argued defendant acted in self-defense and that the State had the burden to disprove this defense beyond a reasonable

---

[3] "Investigating detectives recovered no weapons from the victim." Id. at 3.

doubt." Id. at 9. "[T]he judge instructed the jury on self-defense," "murder and passion/provocation manslaughter," and "aggravated and reckless manslaughter." Id. at 9-11. Defendant raised two issues on appeal pertaining to the jury instructions and the jurors' notetaking. In affirming defendant's convictions, we rejected both arguments. We concluded "[n]o confusion occurred by reason of the court giving sequential charges on self-defense, murder, and manslaughter." Id. at 14, 18. We also determined that the trial court did not abuse "its discretion by allowing the jury to take notes while reviewing the liquor store's video surveillance footage in the midst of deliberations." Id. at 19.

Defendant filed a timely pro se PCR petition alleging numerous claims of ineffective assistance of counsel (IAC). A counseled brief submitted on defendant's behalf incorporated defendant's pro se claims and raised additional claims. Pertinent to this appeal, defendant argued his trial counsel failed to conduct an adequate pretrial investigation into the effect that the consumption of drugs and alcohol had on the victim. Despite his trial concession that he could have safely retreated, defendant asserted that his attorney should have produced an expert to support his self-defense claim that the victim was the aggressor and defendant feared for his life. See State v. Bryant, 288 N.J. Super. 27, 34-35

(App. Div. 1996) ("[T]he defendant may not use [deadly] force if he 'knows that he can avoid the necessity of using such force with complete safety by retreating . . . .'" (quoting N.J.S.A. 2C:3-4b(2)(b))).  Defendant asserted that his attorney should have also advanced a mistake of fact defense, see N.J.S.A. 2C:2-4(a)(1), because the victim's failure to react to the stab wounds due to his consumption of drugs and alcohol rendered defendant ignorant of the fact that he was inflicting lethal injuries and thus negated the requisite mental state to establish murder.

In support, defendant submitted an expert report prepared by Dr. Mark Taff, a forensic pathologist, who reviewed the medical examiner's autopsy findings as well as the victim's toxicology report.  Taff opined that based on the victim's "blood-alcohol concentration," he "was in the euphoric/excited stages of acute alcohol intoxication" and "would have manifested a variety of clinical signs and symptoms, . . . including . . . decreased response to pain." Additionally, Taff opined that the combined effect of alcohol and cocaine detected in the victim's blood has reportedly caused individuals to exhibit "extreme[] aggress[ion] and violen[ce]."[4]  Taff agreed with the medical

_____

[4] Taff noted that the victim "might (or might not) have had decreased sense of pain due to the combined effects of alcohol and cocaine."

A-2799-18

examiner "that the combination of alcohol and cocaine, in and of themselves, could have caused sudden death due to acute drug intoxication."

Defendant also asserted his counsel was ineffective in handling his claim that he suffered from hyperhidrosis, an uncontrollable sweating condition, to explain why he was sweating while testifying. According to defendant, without the explanation, the jury would conclude that his sweating was indicative of deception instead of a manifestation of his disorder. The trial judge sustained the prosecutor's objection to defendant testifying about the condition without producing supporting medical records. Without providing the supporting records with his PCR submission, defendant asserted his trial counsel was ineffective in failing to produce the records and his appellate counsel was ineffective in failing to raise the issue on appeal.

Defendant further asserted his trial counsel was ineffective by failing to call character witnesses. In his supporting certification, defendant averred that he "provided [his] attorney with the names and contact information of several character witnesses who were prepared to testify as to [his] reputation for nonviolence and peacefulness." However, defendant failed to provide certifications from the purported witnesses to support his claim. Additionally, defendant asserted his trial counsel failed to move to suppress evidence seized

7

from his home and failed to have the surveillance video examined by an expert to determine whether the tapes had been enhanced or altered.

Finally, in his pro se submission, without elaboration, defendant listed the following twenty-five conclusory assertions upon which his PCR claims were based:

> 1. Ineffective [a]ssistance of trial counsel . . . ;
>
> 2. Exclusion of relevant evidence;
>
> 3. Improper use of un-authenticated video;
>
> 4. Rights to speedy trial continually violated;
>
> 5. Video was tampered with and not in the state as when first taken (admission made on record by [detective]);
>
> 6. "Evidential hearing" no jury present;
>
> 7. No physical line-up taken although "alleged witnesses" were in the same building at the same time;
>
> 8. Improper protocol for acquired search warrant;
>
> 9. False statements allowed to be presented to jury by [detective] despite [his] objection via defense lawyer;
>
> 10. Jury misconduct after a court order mandate[d] two . . . jurors during trial to not discuss case[,] two [jurors] violated[,] one blatantly lied to the court while the other admitted it was a discussion[,] both allowed to remain although there were [two] standby replacement jurors;

A-2799-18

11. Allowance of statement made by "alleged witness" by [d]etective without ever having direct confrontation of any witness but statement allowed to be heard by jurors/court, and defending lawyer;

12. After numerous written letters to [a]ppellate lawyer to bring up issues more than five . . . times, he refused to listen to [defendant] and gave wrong legal advice, he stated that those issues were not allowed on direct appeal;

13. Jurors permitance [sic] of note taking during video playback deprived [defendant] of a fair trial;

14. Verdict of jury against the weight of [the] evidence;

15. Denied right to have each an[d] every element of offense proved beyond a reasonable doubt;

16. Improper jury instructions given to the jurors;

17. Denied [request] to explain to jury what was taking place on video;

18. Ineffective assistance of appellate counsel;

19. Repeatedly denied after expressing all the issues raised during trial including the [Driver[5]] "hearing" which challenged the allowance of video was denied[,] and wrong legal advice given "when lawyer stated . . . only issues dealing with jurors" matters could be filed on direct [appeal], all else was for PCR[,] against my own knowledge and request[,] lawyer do not at [sic] on my wishes or my defense;

---

[5] State v. Driver, 38 N.J. 255 (1962)

A-2799-18

20. No character witness on my defense which could help in [defendant's] defense as some of the same mitigating circumstances were the same . . . . ;

21. [Was] never completely given all of [defendant's] discovery[,] paper CD/recording were not complete after numerous direct request to the trial lawyer . . . ;

22. Denial of right to change lawyer, judge on record telling [defendant] not to do so . . . . ;

23. Prosecution withheld evidential witness testimony in regards [sic], what was helpful in [defendant's] defense;

24. Judge verbally instructing jurors to disregard everything other than her instruction to follow;

25. There was never a[n] actual strategy or plan during trial, no actual defense was ever truly done by trial lawyer.

Following oral argument, the PCR judge denied defendant's petition by order dated November 26, 2018. In an oral opinion, the judge applied the governing legal principles and concluded defendant failed to establish a prima facie case of IAC by a preponderance of the evidence. Viewing the facts in the light most favorable to defendant, the judge found defendant failed to show that either counsel's performance fell below the objective standard of reasonableness set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 49-53 (1987), or that the

10

outcome would have been different without the purported deficient performance as required under the second prong of the Strickland/Fritz test. Additionally, the judge concluded that defendant was not entitled to an evidentiary hearing because he failed to present any issues that could not be resolved by reference to the existing record.

Regarding trial counsel's failure to "thoroughly investigate[]" the "intoxication of the victim" and "call [an expert] witness" to support a "mistake of fact" defense, the judge found that counsel exercised "reasonable professional judgment[]" and sound "trial strategy" in advancing self-defense and arguing "[p]rovocation" to the jury. Further, defendant failed to establish prejudice since the victim's intoxication was presented at trial through the medical examiner's testimony[6] and "the [trial] judge, in fact, charged manslaughter in th[e] case."

The judge also considered the remaining claims, including the handling of defendant's sweating disorder, the failure to call character witnesses, the failure

_____

[6] In a June 19, 2013 pre-trial order, the trial judge noted that trial counsel withdrew his "motion[] to introduce evidence of the victim's character pursuant to N.J.R.E. 404, . . . upon representations by the State that it would introduce the toxicology report of the victim[,]" which report was in fact introduced at trial.

A-2799-18

to challenge the search warrant for defendant's home,[7] the failure to determine whether the surveillance video had been enhanced or altered,[8] and defendant's pro se claims.[9] Focusing on defendant's inability to overcome the prejudice prong of the Strickland/Fritz test given the "overwhelming evidence" of defendant's guilt, the judge expressly "reject[ed all] the claims." See Strickland, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). This appeal followed.

On appeal, defendant raises the following arguments for our consideration:

---

[7] This claim is belied by the record. Not only did trial counsel challenge the search warrant but the challenge resulted in the trial judge suppressing "firearms seized" from defendant's home in an April 26, 2013 oral opinion that was memorialized in the June 19, 2013 pre-trial order. The suppression motion was denied as to "all other evidence seized."

[8] The PCR judge noted that contrary to defendant's claim, prior to admitting the surveillance video into evidence, the trial judge conducted "a Driver hearing" to determine the video's "trustworthiness" and "reliability." See Driver, 38 N.J. at 287 (holding that "[a]s a condition to admissibility" of a sound recording, a court should consider several factors including whether "the recording is authentic and correct," and whether any "changes, additions, or deletions have been made" to the recording).

[9] Regarding defendant's pro se claim that the trial judge failed to allow him to change attorneys, the PCR judge expressly found there was "nothing in the record to support [the claim]" and characterized it as a "bold-faced assertion."

POINT I

DEFENDANT RECEIVED [IAC] FROM HIS TRIAL ATTORNEY AND HIS APPELLATE ATTORNEY.

. . . .

[A].  Trial Counsel Failed To Conduct An Adequate Pretrial Investigation As To Whether The Drugs And Alcohol Consumed By The Victim Rendered Him . . . Irrational, Aggressive And Insensitive To Pain And Thereby Negating The Charge Of First[-]Degree Murder.

[B]. Trial Counsel Was Ineffective Because He Did Not Call An Expert Witness To Establish A Defense Of Mistake Of Fact Pursuant To N.J.S.A. 2c:2-4[.]

[C].  Trial Counsel Failed To Provide The Trial Court With Defendant's Medical Records With Respect To His Medical Condition Of Hyperhidrosis.

[D].  Appellate Counsel Was Ineffective Because He Did Not Raise As An Issue The Trial Court's Refusal To Permit [Defendant] To Introduce Medical Evidence Of His Medical Condition Of Hyperhidrosis.

[E]. Trial Counsel Failed To Call Character Witnesses Who Would Have Attested To [Defendant's] Reputation For Nonviolence.

13

[F].   Trial Counsel Failed To Move To Suppress Evidence Seized From His Client's Home.

[G].   Trial Counsel Failed To Challenge That The Surveillance Video Had Been Altered Or Enhanced.

POINT II

WITHOUT JUSTIFICATION, THE TRIAL COURT DENIED [DEFENDANT'S] REQUEST TO CHANGE TRIAL COUNSEL[.]

POINT III

ISSUES RAISED PURSUANT TO STATE V. RUE[10] AND STATE V. WEBSTER[11] (ARGUED BY PCR COUNSEL . . . BUT NOT RULED ON BY THE COURT[.])

Like the PCR judge, we reject defendant's contentions, adding the following comments for amplification.

To establish a prima facie claim of IAC, a defendant must show "by a preponderance of the credible evidence," State v. Goodwin, 173 N.J. 583, 593 (2002) (citing State v. Preciose, 129 N.J. 451, 459 (1992)), that: (1) counsel's performance was deficient; and (2) the deficiency prejudiced the defense.

---

[10]  State v. Rue, 175 N.J. 1 (2002).

[11]  State v. Webster, 187 N.J. 254 (2006).

Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 58. The Strickland/Fritz standard applies equally to both trial and appellate counsel. State v. Guzman, 313 N.J. Super. 363, 374 (App. Div. 1998); see also State v. Morrison, 215 N.J. Super. 540, 546 (App. Div. 1987).

Because "a defendant must overcome a 'strong presumption' that counsel exercised 'reasonable professional judgment' and 'sound trial strategy' in fulfilling his responsibilities," State v. Hess, 207 N.J. 123, 147 (2011) (quoting Strickland, 466 U.S. at 689-90), "an otherwise valid conviction will not be overturned merely because the defendant is dissatisfied with his . . . counsel's exercise of judgment during the trial." State v. Castagna, 187 N.J. 293, 314 (2006) (citing State v. Coruzzi, 189 N.J. Super. 273, 319-20 (App. Div. 1983)). Indeed, "[t]he quality of counsel's performance cannot be fairly assessed by focusing on a handful of issues while ignoring the totality of counsel's performance in the context of the State's evidence of defendant's guilt." Ibid. (citing State v. Marshall, 123 N.J. 1, 165 (1991)). Thus, "strategic miscalculations or trial mistakes are insufficient to warrant reversal 'except in those rare instances where they are of such magnitude as to thwart the fundamental guarantee of [a] fair trial.'" Id. at 315 (alteration in original)

15

(quoting State v. Buonadonna, 122 N.J. 22, 42 (1991)). This case does not present such a rare instance.

Further, the mere raising of a PCR claim does not entitle the defendant to an evidentiary hearing. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Rather, "view[ing] the facts in the light most favorable to a defendant," Preciose, 129 N.J. at 463, PCR judges should grant evidentiary hearings in their discretion only if the defendant has presented a prima facie claim of IAC, material issues of disputed fact lie outside the record, and resolution of those issues necessitates a hearing. R. 3:22-10(b); State v. Porter, 216 N.J. 343, 355 (2013). However, "[a] court shall not grant an evidentiary hearing" if "the defendant's allegations are too vague, conclusory or speculative," R. 3:22-10(e)(2), and a defendant "must do more than make bald assertions that he was denied the effective assistance of counsel." Cummings, 321 N.J. Super. at 170. Instead, he must support his claims with "affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." Ibid.

Additionally, a PCR claim is not a substitute for a direct appeal and thus must overcome procedural bars before it can even be considered on the merits. R. 3:22-3. To that end, "a defendant may not employ [PCR] to assert a new

claim that could have been raised on direct appeal, Rule 3:22-4, or to relitigate a claim already decided on the merits, Rule 3:22-5." Goodwin, 173 N.J. at 593. See State v. McQuaid, 147 N.J. 464, 484 (1997) ("If the same claim is adjudicated on the merits on direct appeal a court should deny PCR on that issue, thereby encouraging petitioners to raise all meritorious issues on direct appeal.").

Here, defendant renews the arguments rejected by the PCR judge. Based on our review of the record and the governing legal principles, we conclude that some of defendant's claims, particularly his pro se claims, are procedurally barred, while the rest are belied by the record or substantively without merit. See State v. Worlock, 117 N.J. 596, 625 (1990) ("The failure to raise unsuccessful legal arguments does not constitute [IAC]."). None of defendant's submissions, including the post-trial expert report of Dr. Taff opining on the probable impact of the victim's intoxication level, provide an even colorable basis to set aside defendant's convictions. Thus, we are satisfied that defendant failed to make a prima facie showing of IAC within the Strickland/Fritz test to warrant relief or an evidentiary hearing. See State v. Reevey, 417 N.J. Super. 134, 146-47 (App. Div. 2010) ("[I]t is within our authority to conduct a de novo review of both the factual findings and legal conclusions of the PCR court"

A-2799-18

where, as here, no evidentiary hearing was conducted (citations and internal quotation marks omitted)). We also conclude that the arguments are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2799-18