705 A.2d 366

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. JOSEPH BILEK, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 6, 1998—Decided January 23, 1998.

Before Judges PRESSLER, CONLEY and WALLACE.

*William J. Rohr,* Assistant Deputy Public Defender, argued the cause for appellant (*Ivelisse Torres,* Public Defender, attorney; *Mr. Rohr,* on the brief).

*Jennifer L. Gottschalk,* Deputy Attorney General, argued the cause for respondent (*Peter Verniero,* Attorney General, attorney; *Ms. Gottschalk,* of counsel and on the brief).

The opinion of the court was delivered by

CONLEY, J.A.D.

Following a jury trial, defendant was acquitted of the charge of possession of a handgun with the purpose to use it against Ricardo Lapa, Sr., but convicted of fourth degree aggravated assault pursuant to *N.J.S.A.* 2C:12–1b(4), that is, pointing a firearm at or in the direction of Ricardo Lapa, Sr., under circumstances manifesting extreme indifference to the value of human life. A custodi-

al term of eighteen months with an eighteen month disqualifier was imposed.

## I

██ On appeal, defendant raises the following contentions:

POINT I. THE COURT ERRED IN DENYING DEFENDANT'S WRITTEN REQUEST TO CHARGE ON VARIOUS MATERIAL ELEMENTS OF THE LAW IN REGARD TO THE RIGHT TO USE FORCE OR DEADLY FORCE UPON AN INTRUDER UNDER *N.J.S.A.* 2C:3–4c.

A. The court erred in denying defendant's written request to charge that the occupant of a dwelling has the right to use deadly force upon or toward an intruder under *N.J.S.A.* 2C:3–4c. Defendant was prejudiced by the denial of that request to charge because the right to use deadly force against an intruder negates the essential element of "manifesting extreme indifference to the value of human life" of an aggravated assault offense under *N.J.S.A.* 2C:12–1b(4).

B. The court erred in denying defendant's request to charge the definition of "personal injury."

C. The court erred in denying defendant's request to charge the jury that a dwelling includes the threshold, entrance or doorway; and that in protecting himself defendant had a right to meet an intruder at the threshold without retreating.

D. The court erred in denying defendant's request to charge that one may be treated as an intruder under *N.J.S.A.* 2C:3–4c if he poses a risk of personal injury to the occupant of a dwelling by unlawfully entering or attempting to enter a dwelling.

POINT II. DEFENDANT WAS DENIED A FAIR TRIAL UNDER THE FEDERAL AND STATE CONSTITUTIONS BECAUSE THE JURY WAS NOT CHARGED ON THE USE OF FORCE IN DEFENSE OF PREMISES UNDER *N.J.S.A.* 2C:3–6 (NOT RAISED BELOW).

POINT III. THE COURT ERRED IN DENYING DEFENDANT'S MOTION TO STRIKE THE TESTIMONY OF POLICE OFFICERS THAT DEFENDANT NEVER REQUESTED TO FILE ASSAULT, BURGLARY OR TRESPASSING COMPLAINTS AGAINST THE LAPAS SUBSEQUENT TO HIS ARREST. SUCH TESTIMONY PREJUDICED DEFENDANT'S RIGHT TO REMAIN SILENT.

POINT IV. DEFENDANT WAS DENIED A FAIR TRIAL AS A RESULT OF THE PROSECUTOR'S ASSERTION ON CROSS–EXAMINATION OF DEFENDANT THAT DEFENDANT HAD A DISPOSITION FOR VIOLENCE THAT CAUSED HIM TO ASSAULT TENANTS AND TO THUS BE THE AGGRESSOR IN THE CONFRONTATION WITH THE LAPAS (NOT RAISED BELOW).

POINT V. THE CUMULATIVE EFFECT OF ALL THE ERRORS DENIED DEFENDANT A FAIR TRIAL UNDER THE STATE AND FEDERAL CONSTITUTIONS.

Self-defense was a key issue in the trial and thus points I and II concern the self-defense jury charge. Erroneous jury instructions on matters material to a jury's deliberations are ordinarily presumed reversible error. *State v. Vick*, 117 *N.J.* 288, 289, 566 *A.*2d 531 (1989). Our review of the evidence, the charge and the pertinent law convinces us that the self-defense charge was misleading and probably led to an unjust conviction, although our reasons differ somewhat from the arguments asserted in points I and II.

Because the conviction must be reversed and the matter remanded for a new trial, we need not address the trial error contentions raised in points III and IV since the underlying circumstances may not recur. But we caution the State that in the event there is a new trial, the contentions in both points have merit. As to point III, we urge the trial judge to reconsider counsel's objections to any use by the prosecutor of defendant's failure to file countercomplaints. As to point IV, although there was no objection to the prosecutor's blatant misuse of defendant's testimony concerning his landlord's instructions, we would expect that misuse will not be repeated.[1]

## II

The aggravated assault conviction involved the pointing of a firearm at Ricardo Lapa, Sr. on September 27, 1995. On that day, defendant was the part-time superintendent of an 18 unit apart-

---

[1] Specifically, we refer to the cross-examination of defendant during which the prosecutor suggested, without any factual basis, that defendant was a violent person and that his landlord was "aware that [he was] a violent person and that's why he had to inform [defendant] not to hit someone[.]" This theme was repeated during summation when the prosecutor queried "Why would the landlord have to tell him don't hit anyone ... Do you think A & P and Pathmark, when they hire cashiers, they say look, if someone disputes whether or not something is on sale, don't hit them? Don't hit them, call the manager. Doesn't happen that way."

ment complex. He lived in one of the apartments on the third floor. There was only one entrance into the apartment which went from a common hallway into the kitchen. The Lapa family resided in an apartment on the second floor and consisted of Ricardo Lapa, Sr., age 44, his wife, his 17 year old son, Ricardo Lapa, Jr., and his 15 year old daughter, Maria.

Sometime during the afternoon of September 27, 1995, Ricardo Junior overheard his sister Maria tell his mother that defendant had used profane language toward her. Ricardo Junior became angry and went to defendant's apartment. When defendant refused to answer the door, Ricardo Junior returned to his apartment. But he told his father of the incident during dinner. Ricardo Senior became angry, interrupted dinner and headed for defendant's apartment. Ricardo Junior went with him. They knocked on the door and when defendant opened it, they confronted him. At that time, Ricardo Senior weighed about 170 pounds and Ricardo Junior was five feet 10 inches tall and weighed 220 pounds. There was much factual dispute over who were the aggressors; indeed, that was the critical factual dispute. But it is evident that the situation became quite heated. And, although there is some dispute as to whether the "victims" actually went into the kitchen, it is clear that they were, at the least, in the doorway of the apartment. Moreover, although as we have said it was disputed, a jury could have concluded beyond a reasonable doubt that the Lapas were the aggressors. In any event, defendant, who said he was "terrified" and he "knew that this [was] turning into something really, really nasty, ..." went into his bedroom and returned to the kitchen with a gun. He "racked" it and pointed it at them. The Lapas immediately fled from the entranceway and returned to their apartment on the second floor where they phoned the police. Defendant was shortly thereafter arrested.

### III

As we have said, and as the particular facts make clear, self-defense was key. And it was made somewhat more complex

because while all agreed that pointing a firearm does not constitute deadly force, *N.J.S.A.* 2C:3–11b, defendant nonetheless wanted the judge to include a reference to the appropriate use of deadly force for self-defense purposes, yet also tell the jury that defendant, though he could have, did not use such force.

The charge did not include a reference to deadly force. Here is how the critical aspects of the charge were given. The jury was first charged on the substantive elements of the aggravated assault. Those instructions contained no reference to self-defense as a defense. The jury was then charged on the substantive elements of possession for an unlawful purpose. Under the particular circumstances here, in the course of that charge, the judge pointed out the State's contention that defendant's unlawful purpose in possessing the gun was to use it "unlawfully against ... Ricardo Lapa, Jr. and Sr. by pointing it at them." He then specifically referred to self-defense, explaining "[t]he defense, on the other hand, contends that the defendant used the firearm in self-defense to prevent the Lapas from further attacking him and to get them to leave his apartment," and he instructed, as to the possession charge, that any lawful purpose would be a defense and that if defendant believed his purpose was to use the firearm to protect himself against the use of unlawful force, then he would not have the necessary criminal purpose in possessing the gun. This express reference to self-defense in the context of the substantive charge on the possessory offense, and the corresponding omission of such reference in the substantive charge on the aggravated assault charge, was repeated when the jury asked for reinstructions on the two substantive offenses.

We here pause to reflect our concern as to this aspect of the charge. Presumably, the express reference to self-defense in the context of the possession charge was an effort to comply with *State v. Harmon*, 104 *N.J.* 189, 516 *A.*2d 1047 (1986). In *Harmon*, the Supreme Court held that a defendant is entitled to have the jury instructed that possession of a weapon for a precautionary purpose is not violative of *N.J.S.A.* 2C:39–4d and that a finding of

an unlawful use of the weapon would not establish that his purpose in arming himself was to commit an unlawful act. *Harmon, supra,* 104 *N.J.* at 211, 516 *A.*2d 1047. The proper inquiry, in that respect, is not whether the defendant was justified in the use of the weapon, but rather whether his purpose in possessing the weapon was to commit an unlawful act. *State v. Martinez,* 229 *N.J.Super.* 593, 607, 552 *A.*2d 232 (App.Div.1989). Thus, the focus of the charge as to the lawfulness of the possession is not upon the defense of self-defense. It seems that the charge here intertwined the self-defense principles and, thus, may have been misleading. Had defendant not been acquitted of this charge, it might have required a reversal. Nonetheless, we think the express reference to the defense of self-defense as part of the possession offense added to the other difficulties we have with the self-defense charge itself.

■ The self-defense charge was twofold. It began with a series of instructions applicable to self-defense generally. The jury was instructed:

> The defendant contends that if the State proves he used or threatened to use force upon the other person, that such force was justifiably used for his self-protection.
>
> "The use of force upon or toward another person is justifiable when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion."
>
> In other words, self-defense is the right of a person to defend against any unlawful force. Self-defense is always the right of a person against seriously threatened unlawful force that is actually pending or reasonably anticipated.
>
> When a person is in eminent (sic) danger of bodily harm, the person has a right to use force when that force is necessary to prevent the use against him of unlawful force.
>
> *The force used by the defendant must not be significantly greater than and must be proportionate to the unlawful force threatened or used against the defendant.*
>
> Unlawful force is defined as force used against a person without the person's consent in such a way that the action would be a civil wrong or criminal offense.
>
> If the force used by the defendant was not immediately necessary for the defendant's protection or *if the force used by the defendant was disproportionate in its intensity, then the use of selfforce by the defendant was not justified under self-defense and the claim fails.*

There are different levels of force that a person may use in his own defense to prevent unlawful harm. *The defendant can only use that amount or degree of force that he reasonably believes necessary to protect himself against harm.*

*A person may use non deadly force in his own defense.*

*If you find that this defendant did use non deadly force to defend himself, then you must determine whether that force was justified.*

A person may use non deadly force to protect himself if the following conditions exist:

One. The person reasonably believes he must use force.

Two. The person reasonably believes that the use of force was immediately necessary.

Three. The person reasonably believes he is using force to defend himself against unlawful force.

Four. *The person reasonably believes that the level of the intensity of the force he uses is proportionate to the unlawful force he's attempting to defend against.*

A reasonable belief is one which would be held by a person of ordinary prudence and intelligence situated as this defendant was.

*Self-defense exonerates a person who uses force in the reasonable belief that such action was necessary to prevent his or her death or serious injury even though his belief was later proven mistaken.* Accordingly, the law requires only a reasonable, not necessarily a correct judgment.

Remember, only if you conclude that in using force the defendant reasonably believed he was defending against unlawful force is the defense available to him.

[Emphasis added.]

Thus, as reflected by the emphasized portions of the charge, in the first portion of the self-defense charge, the jury was told, among other things, that the use of force by defendant in self-defense must not be "significantly greater" than and must be "proportionate" to the unlawful force used or threatened. The jury was expressly told that if the use of force was "disproportionate in its intensity," then the defense of self-defense would not apply. The jury was also told that defendant could use only the amount of force that he reasonably believed was necessary and that if non deadly force was used, it must be reasonably believed that the level of that force was proportionate to the unlawful force. Finally, the jury was instructed in this part of the charge that self-defense requires a reasonable belief that force is needed to prevent death or serious injury.

After explaining that it was the State's burden to disprove self-defense beyond a reasonable doubt, the judge then charged

*N.J.S.A.* 2C:3–4c, applicable to the defense of one's home against intruders. In this respect, the jury was charged:

> In this case the defendant contends that he was attacked in his apartment or by the door of his apartment by Ricardo Lapa, Jr. and Sr., who were intruders.
>
> For force used by a defender to be justified, the following two conditions must exist:
>
> One. The other person, that is the Lapas, was an intruder who was unlawfully in the dwelling.
>
> An intruder is one unlawfully in the dwelling, that is, he was not licensed or privileged to be in the dwelling.
>
> *The term dwelling means any building or structure, though movable or temporary, or a portion thereof including a porch or other similar appurtenance which is used as a person's home or place of lodging.*
>
> Two. The defendant reasonably believes that force was immediately necessary for the purpose of protecting himself in the dwelling against the use of unlawful force by the intruder on the present occasion.
>
> *A reasonable belief exists when the defendant, to protect himself, was in his own dwelling at the time of the offense and encounter between the defendant and through the intruder, was suddenly and unexpectedly compelled to act instantly, and the defendant reasonably believed that the intruder would inflict bodily injury upon the defendant in the dwelling, or the defendant demanded that the intruder disarm, surrender, or withdraw and the intruder refused to do so.*
>
> I instruct you that a reasonable belief is different from an honest belief. What is reasonable is not measured by what a defendant found reasonable, but rather by what a jury finds reasonable. Thus, the reasonableness of defendant's belief is based upon an objective standard, that is, by how an ordinary, reasonable person with a detached viewpoint would view it. A subjective belief, based on the viewpoint of the defendant is immaterial.
>
> *If the defendant did employ protective force, he has the right to estimate the necessity of using force without surrendering position, withdrawing, or doing any other act which he has no legal duty to do or abstain from any lawful action.*
>
> [Emphasis added.]

■ It is not suggested that both aspects of the charge are not legally correct and, further, consistent with the pertinent model jury charges. But, trial judges have repeatedly been told to "mold the instruction in a manner that explains the law to the jury in the context of the material facts of the case." *State v. Concepcion,* 111 *N.J.* 373, 379, 545 *A.*2d 119 (1988). Of course, not every failure to do so is fatal. *State v. Baker,* 303 *N.J.Super.* 411, 414, 697 *A.*2d 145 (App.Div.), *certif. denied,* 151 *N.J.* 470, 700 *A.*2d 882 (1997). But the need for tailored jury charges in the context of

self-defense has recently been reemphasized. *State v. Gartland,* 149 *N.J.* 456, 475–76, 694 *A.*2d 564 (1997).

We are convinced the failure to do so here rendered an already confusing charge hopelessly misleading. To begin with, and perhaps most critically, we see no reason for inclusion of the quite different general self-defense charge. Defendant's claim of self-defense here was that of defense of one's dwelling pursuant to *N.J.S.A.* 2C:3–4(c). We say this because although at one point in his testimony Lapa Senior seemed to indicate they remained in the hallway, and thus did not enter defendant's dwelling, and although there was a dispute as to how far they entered into the apartment, we are convinced that there is no reasonable basis for any conclusion other than, at the least, the Lapas, and the confrontation, occurred in the doorway of the apartment. The doorway or entranceway of one's dwelling is indeed part of the dwelling for the purposes of *N.J.S.A.* 2C:3–4(c). *State v. Bonano,* 59 *N.J.* 515, 520, 284 *A.*2d 345 (1971); *State v. Martinez, supra,* 229 *N.J.Super.* at 603–04, 552 *A.*2d 232.

The inclusion of the general self-defense charge, not tailored to the defense of one's dwelling, could only have been confusing at best, totally misleading at worst. That charge is distinct from *N.J.S.A.* 2C:3–4(c) and contains significant differences. The differences are reflected in the portions of the charges which we have emphasized. For one thing, the general charge focuses upon the use of "non-deadly" force. It can not be readily apparent to the average nonlegal individual that pointing a loaded handgun is "non-deadly" force. Thus, the suggestion to the jury, since it was not told that pointing a loaded handgun is "non-deadly force," might have been that self-defense did not apply at all. For another thing, the general charge seems to require a reasonable belief that the defendant is faced with actual or threatened *death* or *serious* bodily injury. A lesser degree of threat justifies force in defending one's dwelling under *N.J.S.A.* 2C:3–4(c), that is to say, only the threat of "personal injury" is necessary. *N.J.S.A.* 2C:3–4(c)(2)(a). We doubt that without that difference being

made clear, as was not done here, the distinction was lost. That is quite critical in the context of the particular facts, for, whatever may have actually occurred, it is doubtful that one could reasonably conclude that death or serious inquiry was threatened.

Additionally, and perhaps most critically, the general instruction emphasizes the proportionality of the force used to self-defend against the aggressor's unlawful force. Defense of one's home pursuant to *N.J.S.A.* 2C:3–4(c) is quite distinct, and does not require such proportionality. *State v. Gartland, supra,* 149 *N.J.* at 467, 694 *A.*2d 564 ("*N.J.S.A.* 2C:3–4(c) provides special rules for the use of deadly force on an intruder into one's dwelling. For example, under this provision, deadly force may be used against an intruder to counter any level of unlawful force threatened by the intruder."). It is clear to us that the critical questions for the jury to resolve were whether the Lapas were the aggressors and what "force" defendant reasonably perceived himself to be confronted by. The notion of disproportionality should have had no role in this consideration, yet the jury charge most certainly does not make that clear. Indeed, it is quite to the contrary.

We are convinced that a proper focus upon the facts, as requested by defendant, and a molding of the model charges to those facts, should have led to several conclusions. First, only a charge on *N.J.S.A.* 2C:3–4(c) was required. Second, "dwelling" should have been expressly defined to include the apartment's entranceway. While the trial judge referred to a porch as being part of a dwelling, we do not think that necessarily would be understood to include the doorway into a common hallway in an apartment setting. Further, the jury should also have been told that the level of force used need not be proportionate to the unlawful force.

We are also convinced that, while we do not quite understand defendant's assertion that the term deadly force should have been included since no deadly force was used, the jury nonetheless should have been expressly told that pointing a loaded firearm does constitute force to which self-defense of one's dwelling may

apply. We say this for several reasons. As we have said, the jury could have believed that pointing a loaded handgun is "deadly force," so that when only "force" was referred to in the *N.J.S.A.* 2C:3–4(c) charge, it may have believed the defense did not apply at all. The fact, moreover, that the substantive charge on the aggravated assault did not include a reference to self-defense as a defense, whereas the substantive charge on the possession for unlawful purpose charge did, an omission that was repeated, may well have had the same effect. On the other hand, and at the opposite side of the spectrum of various degrees of "force," while racking and pointing a loaded handgun may be thought of as the display of more than simple force, the jury may have thought that the act of simply *pointing* the gun, loaded or not, is no force at all. Either way, the point is that without tailoring the charge to the facts here and telling the jury that defendant's pointing of the handgun at or in the direction of the "victims" was the use of force that could be justified under *N.J.S.A.* 2C:3–4(c), the jury instructions could have unfairly led to a premature rejection of self-defense as a defense to the aggravated assault charge.

Indeed, it seems as if this may well have occurred here given the acquittal on the charge of possession of the handgun for an unlawful purpose. Under the particular circumstances here, the predicate facts for the asserted unlawful purpose and the unlawful pointing were identical. It is difficult to understand how defendant could have armed himself with the gun for a lawful protective purpose, as the jury evidently found, and yet have pointed the gun without justification. Unlike, for instance, *State v. Harmon, supra,* 104 *N.J.* 189, 516 *A.*2d 1047, the pointing and the arming, as tried by the State and charged to the jury, arose from the same conduct.

In the end, this was a very simple case. A heated confrontation occurred between the uninvited Lapas and defendant. What actually occurred and who were the aggressors was disputed, but it is fairly clear that whatever occurred did so in the entranceway of the apartment, if not inside. The real and probably only issues

were whether defendant reasonably perceived himself to be confronted by unlawful force and whether the Lapas were the aggressors. If so, defendant's pointing of the gun, regardless of whether it was more than needed to end the confrontation, would have been justified. We have no assurance the jury understood this.

## IV

On remand then, and assuming the evidence is similar, only *N.J.S.A.* 2C:3–4(c) should be charged. Though we see no reason for further confusing the charge by referring to the use of deadly force when such force was not involved, the jury should be expressly told that pointing a firearm is the use of force within the meaning of that defense and that such force, even if thought to be excessive, may be used if the intruders (the Lapas) were the aggressors. Further, the jury should be expressly told that the doorway or entranceway of the apartment is within the meaning of "dwelling." We agree with defendant "personal injury" as referred to in *N.J.S.A.* 2C:3–4(c)(2)(a) probably should be defined consistently with the related definition of "bodily harm" under *N.J.S.A.* 2C:3–11e. The need, however, to do so would not be crucial since the distinct, and potentially confusing, reference to death or serious injury that was part of the general self-defense language should not be part of the tailored self-defense charge on retrial.

Reversed and remanded for a new trial consistent with this opinion.