**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3358-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MARCEL J. STEELE,

    Defendant-Appellant.

_____

Submitted November 6, 2025 – Decided December 23, 2025

Before Judges Berdote Byrne and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Indictment No. 19-02-0116.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Monique Moyse, Designated Counsel, on the brief).

Andrew B. Johns, Gloucester County Prosecutor, attorney for respondent (Michael Mellon, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Marcel Steele appeals from an order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. The matter involves defendant's fatal shooting of one victim and aggravated assault of another as both victims were fleeing the scene after attempting an armed robbery at defendant's home. Pursuant to a negotiated plea agreement, defendant plead guilty to second-degree manslaughter, second-degree aggravated assault, and third-degree possession of marijuana with intent to distribute.

Defendant's PCR petition alleged: (1) counsel coerced him into pleading guilty by demanding additional fees if he proceeded to trial; (2) counsel failed to investigate or develop a self-defense theory; (3) counsel failed to adequately advocate for mitigating factors at sentencing; and (4) counsel failed to argue for concurrent sentences at sentencing. Finding no basis for the requested relief, we affirm.

First, counsel's discussion of further payment merely explained defendant's options and did not amount to coercion. Defendant had the right to avail himself of appointed counsel if he could no longer afford private counsel, and he admitted there was no undue influence while under oath during the plea colloquy. Counsel also reasonably declined to pursue self-defense because the facts demonstrated deadly force was not necessary, rendering the defense

A-3358-23

meritless.  Counsel also presented a thorough argument for the application of mitigating factors when he submitted a detailed memorandum to the sentencing court.  Finally, the plea agreement explicitly stated the sentences were to run consecutively, and crimes involving multiple victims who suffer death or serious bodily injury, as here, ordinarily merit the imposition of consecutive sentences.

I.

On November 28, 2018, defendant possessed approximately one pound of marijuana at his residence in Westville, New Jersey.  Some of the marijuana was for personal use and some was intended for distribution.  Jodeci Robinson, who had previously bought marijuana from defendant and owed him $200, arranged to come to the house to repay the debt and purchase more marijuana.  To facilitate their agreement, defendant sent Robinson a picture of the marijuana in his possession.  Before the arranged meeting with defendant, Robinson and his friend, Saliim Bey, whom defendant did not know, exchanged Facebook messages where they potentially discussed robbing defendant.

Robinson and Bey arrived at defendant's residence.  Defendant's mother also lived at the address and was present during these events.  Robinson and Bey argued with defendant about the outstanding debt.  During the altercation, Bey produced a handgun and fired a shot into the floor close to where defendant

3

stood. Bey then backed out of the room while pointing the gun at defendant, shut the door with defendant in the room, and fled.

Defendant then retrieved a 9-millimeter handgun he kept in the home for protection.[1] Defendant fired at both Robinson and Bey as they fled toward the door and continued to fire as they retreated. Defendant then followed them outside and, while shooting from the porch, shot Robinson—who was unarmed—in the back as he was in the front yard attempting to flee. A witness reported hearing the gunshots from his room. He looked out of his window and observed defendant "fire a handgun several times from the porch . . . towards an unknown male in front of the residence. The victim [was] scream[ing], 'STOP, STOP, STOP, STOP' as [defendant] continued to shoot at the victim." The record does not indicate approximately how far Robinson was from defendant at the time Robinson was shot; it reflects only that defendant was on the porch and he was in the front yard. Robinson died shortly thereafter because of his injuries.

After shooting Robinson, defendant pursued Bey. As Bey ran down the street, defendant chased him and continued to fire at him in the street, striking Bey in the arm as he fled. Following the shooting, defendant and his mother

---

[1] Defendant later admitted he did not possess a permit for the weapon.

A-3358-23

attempted to hide a significant quantity of marijuana outside the house. They subsequently entered an SUV in an apparent attempt to flee; however, police intervened and arrested both at the scene.

On February 13, 2019, a Gloucester County grand jury returned an indictment charging defendant with the following offenses: (1) count one, first-degree murder, in violation of N.J.S.A. 2C:11-3(a)(2); (2) count two, first-degree attempted murder, in violation of N.J.S.A. 2C:5-1(a)(1) and N.J.S.A. 2C:11-3(a)(2); (3) count three, second-degree possession of a firearm for an unlawful purpose, in violation of N.J.S.A. 2C:39-4(a)(1); (4) count four, second-degree unlawful possession of a handgun without a permit, in violation of N.J.S.A. 2C:39-5(b)(1); (5) count five, fourth-degree possession of marijuana in an amount greater than 50 grams, in violation of N.J.S.A. 2C:35-10(a)(3); (6) count six, third-degree possession of marijuana with intent to distribute, in violation of N.J.S.A. 2C:35-5(b)(11); (7) count seven, second-degree possession of a firearm while committing a controlled dangerous substance offense, in violation of N.J.S.A. 2C:39-4.1(a); (8) count eight, third-degree endangering an injured victim, in violation of N.J.S.A. 2C:12-1.2(a); and (9) count nine, fourth-degree obstructing the administration of law or other governmental function, in violation of N.J.S.A. 2C:29-1(a).

On June 21, 2019, defendant plead guilty pursuant to a negotiated plea agreement to amended count one, second-degree manslaughter, N.J.S.A. 2C:11-4(b)(1); amended count two, second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); and count six, third-degree possession of marijuana with intent to distribute, N.J.S.A. 2C:35-5(b)(11). The remaining charges were to be dismissed and the State agreed to recommend a sentence of eight years on amended count one, three years on amended count two, with the original first-degree count to be sentenced in the third-degree range, and three years on count six, all to run consecutively. The trial court found the plea was entered knowingly, willingly, and voluntarily, and further determined defendant provided sufficient factual basis for each count.

The trial court sentenced defendant, consistent with the plea agreement, to an aggregate term of fourteen years' incarceration. Specifically, defendant was sentenced to eight years on amended count one for killing Robinson, subject to 85% parole ineligibility under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, and a three-year mandatory parole term; three years on amended count two for shooting Bey, downgraded to a third-degree offense pursuant to N.J.S.A. 2C:44-1(f)(2), also subject to NERA; and three years on count six. All sentences were ordered to be served consecutively.

6

Defendant appealed his sentence pursuant to Rule 2:9-11.  We affirmed, noting "the sentence is not manifestly excessive or unduly punitive and does not constitute an abuse of discretion."  State v. Steele, No. A-1901-19 (App. Div. Oct. 28, 2020).

Defendant then filed a petition for PCR, raising claims of ineffective assistance of counsel.  After being assigned counsel, defendant filed an amended petition, which the court denied without an evidentiary hearing, finding no prima facie showing of ineffective assistance of counsel.  This appeal followed.

Defendant raises the following issues on appeal:

> POINT ONE
>
> MR. STEELE IS ENTITLED TO AN EVIDENTIARY HEARING ON HIS CLAIM THAT HIS ATTORNEY RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL PRETRIAL BY DEMANDING MORE MONEY AND FAILING TO CONSIDER AND DEVELOP A SELF DEFENSE CASE, THEREBY CAUSING HIM TO PLEAD GUILTY WHEN HE OTHERWISE WOULD HAVE PROCEEDED TO TRIAL OR HAVE RECEIVED A BETTER PLEA OFFER.
>
> POINT TWO
>
> MR. STEELE IS ENTITLED TO RELIEF, AN EVIDENTIARY HEARING, A RESENTENCING, OR FINDINGS BY THE PCR COURT ON HIS CLAIM THAT HIS ATTORNEY WAS INEFFECTIVE AT SENTENCING BY FAILING TO ADVOCATE

7

ADEQUATELY FOR MITIGATING FACTORS AND
CONCURRENT SENTENCES.

We reject these contentions and affirm.

## II.

In State v. Hernandez-Peralta, our Supreme Court recently reaffirmed our role in reviewing PCR petitions: "Our review of a PCR court's factual findings is 'necessarily deferential.' However, we review a PCR court's legal conclusions de novo. State v. Harris, 181 N.J. 391, 419 (2004)." 261 N.J. 231, 246 (2025) (citation omitted) (quoting State v. Nash, 212 N.J. 518, 540 (2013)).

That de novo review extends to whether an evidentiary hearing was necessary to rule on the merits of a PCR petition as, in the absence of PCR, a defendant may argue an evidentiary hearing is warranted to develop the factual record in connection with an ineffective-assistance of counsel claim. See State v. Porter, 216 N.J. 343, 354-55 (2013). However, the PCR court should grant an evidentiary hearing only where: (1) a defendant is able to establish a prima facie case of ineffective assistance of counsel; (2) there are material issues of disputed fact that must be resolved with evidence outside of the record; and (3) the hearing is necessary to resolve the claims for relief. See R. 3:22-10(b); Porter, 216 N.J. at 354.

We preface our analysis by acknowledging the well-known legal principles governing PCR appeals. PCR is analogous to the federal writ of habeas corpus. State v. Pierre, 223 N.J. 560, 576 (2015). To be entitled to an evidentiary hearing, the petitioner must "allege specific facts and evidence supporting his allegations." Porter, 216 N.J. at 355. Both the Sixth Amendment of the United States Constitution and Article 1, Paragraph 10 of the State Constitution guarantee the right to effective assistance of counsel at all stages of criminal proceedings. See Strickland v. Washington, 466 U.S. 668, 686-87 (1984); State v. Fritz, 105 N.J. 42, 58 (1987). In addressing an ineffective-assistance of counsel claim raised in a petition for PCR, New Jersey courts follow the two-part test articulated in Strickland, 466 U.S. at 687. See Fritz, 105 N.J. at 58. "First, the defendant must show that counsel's performance was deficient." State v. Gideon, 244 N.J. 538, 550 (2021) (quoting Strickland, 466 U.S. at 687). "Second, the defendant must have been prejudiced by counsel's deficient performance." Ibid. (citing Strickland, 466 U.S. at 687).

To meet the first prong of the Strickland/Fritz test, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Reviewing courts provide "a strong presumption that counsel's

conduct falls within the wide range of reasonable professional assistance . . . ." Id. at 689. "A court evaluating a claim of ineffective assistance of counsel must avoid second-guessing defense counsel's tactical decisions and viewing those decisions under the 'distorting effects of hindsight.'" State v. Marshall, 148 N.J. 89, 157 (1997) (quoting Strickland, 466 U.S. at 689).

The second Strickland prong requires the defendant to show counsel's errors created a "reasonable probability" that the outcome of the proceeding would have been different if counsel had not made the errors. Strickland, 466 U.S. at 694. This "is an exacting standard." Gideon, 244 N.J. at 551 (quoting State v. Allegro, 193 N.J. 352, 367 (2008)). Prejudice is not presumed but must instead be affirmatively proven by the defendant. Ibid. (quoting Strickland, 466 U.S. at 693).

A defendant's right to effective assistance of counsel extends to the plea negotiation process. State v. Chau, 473 N.J. Super. 430, 445 (App. Div. 2022). When a defendant seeks "[t]o set aside a guilty plea based on ineffective assistance of [plea] counsel, a defendant must show . . . there is a reasonable probability that, but for counsel's errors, [he] would not have pled guilty and would have insisted on going to trial." State v. Nuñez-Valdéz, 200 N.J. 129, 139 (2009) (first alteration in original) (quoting State v. DiFrisco, 137 N.J. 434,

10

A-3358-23

457 (1994)) (internal quotation marks omitted). A defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." State v. Aburoumi, 464 N.J. Super. 326, 339 (App. Div. 2020) (quoting State v. O'Donnell, 435 N.J. Super. 351, 371 (App. Div. 2014)); see also Padilla v. Kentucky, 559 U.S. 356, 372 (2010).

Regarding guilty pleas, the first prong requires us to examine whether the attorney failed to provide advice that "was within the range of competence demanded of attorneys in criminal cases." Nuñez-Valdéz, 200 N.J. at 139 (internal quotation marks omitted). The second prong requires us to evaluate whether there is a "reasonable probability" that "counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words . . . the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

A.    Claims of Ineffective Trial Counsel

Defendant first asserts his counsel was ineffective because he demanded additional fees defendant could not pay, thereby "financially pressure[ing] him into accepting a guilty plea," and, relatedly, failed to investigate and develop a viable self-defense theory for trial that may have resulted in a better plea offer.

11

He contends he would have insisted on a trial or received a more favorable plea deal if afforded effective representation and insists an evidentiary hearing is necessary to develop facts outside the record.

Specifically, defendant asserts counsel financially pressured him into accepting a guilty plea by refusing to set up a payment plan after defendant's family had already paid him $25,000, and defendant could not pay for a trial without a payment plan. Defendant claims counsel was coercive, stating in his PCR petition: "Counsel told Petitioner that if he did not accept the plea deal, Petitioner would be forced to proceed to trial."

We agree with the PCR court that defendant failed to demonstrate a prima facie showing of ineffective assistance of counsel because he did not show a "reasonable likelihood" of success as to the either prong of the Strickland test. Accepting defendant's statements as true, counsel's advice to defendant that he would have to go to trial if he did not accept the plea is simply an explanation of how the criminal justice system operates; it is not coercive in any way. Furthermore, a private attorney requesting payment for his services cannot be deemed inherently coercive and defendant does not allege any accompanying conduct or statements by counsel to suggest coercion. Defendant is not entitled to an evidentiary hearing based upon these bald assertions. See State v.

Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999); R. 3:22-10(e)(2). There is nothing in the record to suggest counsel coerced defendant into accepting the guilty plea.

Moreover, the trial court asked defendant directly if anyone had coerced him into entering into the agreement:

> Q. Sir, has anyone coerced you, threatened you, placed you under duress in any way to enter these pleas of guilty?
>
> A. Absolutely not.

Additionally, defendant was aware he had the right to court-appointed counsel if he could no longer afford his attorney as set forth in defendant's plea colloquy:

> Q. Do you understand in this criminal matter you have the right to be always represented by counsel and at any time you cannot afford an attorney one would be appointed to represent you?
>
> A. Yes, Your Honor.

Defendant offered no credible evidence for his allegations of coercion. There were no certifications from family members or counsel showing payment demands or financial pressure. Even if counsel demanded additional payment to proceed to trial, no coercion resulted because defendant was advised multiple

13

times during the plea colloquy that he had a right to appointed counsel if it became necessary.

Second, defendant claims his counsel was ineffective in failing to investigate and raise a self-defense argument. The PCR court did not err in denying an evidentiary hearing on those grounds because defendant failed to make a prima facie showing under either Strickland prong.

Defense counsel neglecting to conduct adequate pre-trial investigation may give rise to ineffective assistance of counsel claims. Porter, 216 N.J. at 352. However, counsel has no duty to investigate unfounded or meritless claims. See State v. O'Neal, 190 N.J. 601, 619 (2007). Counsel's duty is to conduct a reasonable investigation or to make a reasonable decision that a specific investigation is unnecessary, see State v. Chew, 179 N.J. 186, 217 (2004), and "[m]ere dissatisfaction with a 'counsel's exercise of judgment' is insufficient to warrant overturning a conviction.'" Nash, 212 N.J. at 542 (quoting State v. Echols, 199 N.J. 344, 358 (2009)). Rather, "a [petitioner] must establish . . . trial counsel's actions did not equate to 'sound trial strategy.'" State v. Castagna, 187 N.J. 293, 314 (2006) (quoting Strickland, 466 U.S. at 689).

Self-defense is an affirmative defense to homicide pursuant to the Criminal Code, which provides "the use of force upon or toward another person

14

is justifiable when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." N.J.S.A. 2C:3-4(a). "The use of deadly force is not justifiable . . . unless the actor reasonably believes that such force is necessary to protect himself against death or serious bodily harm." N.J.S.A. 2C:3-4(b)(2) (emphasis added). "[N]or is it justifiable if . . . [t]he actor knows that he can avoid the necessity of using such force with complete safety by retreating . . . ." N.J.S.A. 2C:3-4(b)(2)(b).

There is an exception to the duty to retreat: "The actor is not obliged to retreat from his dwelling, unless he was the initial aggressor." N.J.S.A. 2C:3-4(b)(2)(b)(i). This exception is known as the "castle doctrine" under the common law. State v. Bragg, 260 N.J. 387, 399 (2025). "The Code defines 'dwelling' broadly as 'any building or structure, though movable or temporary, or a portion thereof, which is for the time being the actor's home or place of lodging.'" Id. at 400 (emphasis omitted) (quoting N.J.S.A. 2C:3-11(c)).

At the PCR hearing, defendant argued, because Robinson was within the curtilage of the home at the time he was shot, defendant had no duty to retreat following the attempted armed robbery. However, this court has declined to expand the scope of the term "dwelling" to include the "curtilage" of the house

for purposes of authorizing deadly force pursuant to N.J.S.A. 2C:3-4(b)(2)(b)(i). State v. Canfield, 470 N.J. Super. 234, 306-09 (App. Div. 2022), aff'd as modified, 252 N.J. 497 (2023) (noting "curtilage" is a Fourth Amendment principle, and "the Legislature did not employ the term 'curtilage' in the penal code").

In Canfield, this court examined prior decisions interpreting the term "dwelling" in N.J.S.A. 2C:3-4(c). Id. at 306 (citing State v. Martinez, 229 N.J. Super. 593 (App. Div. 1989); State v. Bilek, 308 N.J. Super. 1 (App. Div. 1998)). The court noted: "In Martinez, we held that for purposes of N.J.S.A. 2C:3-4(c), the term 'dwelling' includes the threshold of the house, such as the porch or front door. In Bilek, we held that a 'dwelling' includes the doorway or entranceway of an apartment." Ibid. (citation omitted). The Canfield court concluded, "So far as we are aware, no judicial decision has interpreted either N.J.S.A. 2C:3-4(c) or N.J.S.A. 2C:3-4(b)(2)(b)(i) to apply to an altercation that occurs entirely outdoors at a location that is not on or at the entranceway to a structure. . . . Nor has the Legislature seen fit to overturn those decisions by expanding the term dwelling to include outdoor areas such as a backyard or driveway." Id. at 306-09.

A-3358-23

According to defendant's statement of facts, Robinson, who was undisputably unarmed, was in the front yard, outside the geographic scope of defendant's dwelling, at the time defendant shot him in the back. Bey was in a public street, entirely off the defendant's property, at the time defendant shot him. Defendant did not have a reasonable belief that deadly force was immediately necessary to protect himself or his mother. Although the shootings followed an attempted armed robbery in defendant's home and Bey had shot at defendant's feet inside the home, Bey backed out of defendant's room and closed the door, allowing defendant time to retrieve a gun, open the door, and pursue both Robinson and Bey, who were undisputedly fleeing from the defendant with their backs turned when defendant employed deadly force and killed Robinson. He then pursued Bey on a public street and shot him. Any self-defense theory would have been highly unlikely to succeed.

Nevertheless, the State argues defense counsel employed the concept of "imperfect self-defense" to secure defendant a highly favorable plea deal. Imperfect self-defense is defined as "an honest but unreasonable belief in the need to use deadly force." State v. Munroe, 210 N.J. 429, 446 (2012). An example is "the overreaction in self-defense to aggressive or threatening conduct, e.g., shooting to kill an unarmed attacker who has fallen to the ground."

State v. Bowens, 108 N.J. 622, 633 (1987). In such circumstances, imperfect self-defense would serve to reduce a murder charge to manslaughter. See ibid. ("That person may not have committed murder purposely or knowingly but may be guilty of one of the forms of manslaughter."). As noted by the State in its opposition, imperfect self-defense was raised by defense counsel and resulted in the negotiated plea agreement where defendant's murder charge was reduced to second-degree manslaughter. Defendant has not demonstrated a reasonable likelihood that proceeding to trial on a claim of self-defense, even if imperfect, would have resulted in an outcome more favorable than a conviction for second-degree manslaughter against an unarmed invitee. Given the seriousness of the charges defendant was facing compared to what he ultimately plead to and the unlikeliness of success at trial, defendant has not shown a reasonable probability he would not have plead guilty and would have insisted on going to trial.

Additionally, defendant's contention his counsel did not discuss self-defense with him is belied by his sworn testimony:

> Q. You have Mr. Leonard by your side. Have you had sufficient time to meet with him to discuss the case?
>
> A. Yes, Your Honor.
>
> Q. Has he been able to answer all the questions you've had?

A. Yes, Your Honor.

Q. Are you satisfied with his services as your lawyer?

A. Yes, Your Honor.

In sum, counsel had no duty to investigate or pursue a meritless self-defense theory because the facts showed defendant fired at Bey and Robinson as they fled. Moreover, Robinson was unarmed, rendering any self-defense argument inappropriate. Nevertheless, counsel successfully pursued an imperfect self-defense theory to garner a favorable downgrade from first-degree murder to second-degree manslaughter, resulting in an eight-year prison sentence rather than a potential sentence of thirty years to life.

B. <u>Claims of Ineffective Counsel at Sentencing</u>

Additionally, defendant asserts three arguments regarding ineffective assistance of counsel with respect to his sentencing. First, he claims counsel was ineffective at sentencing because counsel failed to fully explain the circumstances surrounding defendant's actions to the court, particularly how his conduct arose in response to an armed robbery in which both he and his mother were threatened in their home. This is an attempt to resurrect the self-defense theory discussed above.

A-3358-23

"[T]he failure to present mitigating evidence or argue for mitigating factors" may establish ineffective assistance of counsel. State v. Hess, 207 N.J. 123, 154 (2011). Defendant asserts counsel was ineffective at sentencing because counsel failed to argue for mitigating factors three, N.J.S.A. 2C:44-1(b)(3), four, N.J.S.A. 2C:44-1(b)(4), and five, N.J.S.A. 2C:44-1(b)(5), which were supported by the fact that defendant's conduct arose in response to an attempted armed robbery in which both he and his mother were threatened in their home.[2] This is simply untrue. Counsel submitted a seven-page sentencing memorandum advocating for mitigating factors, including factors two, three, four, and five, which stated:

> (2) The defendant did not contemplate that his conduct would cause or threaten serious harm[:]
>
>> The Defendant did not plan for this crime to happen, nor did he induce it. This matter was essentially brought to the Defendant's doorstep. The Defendant, although acting with the applicable mens rea for the offense, did not actually contemplate the results of the actions, given the nature of the offense and the lack of necessary time for Defendant to contemplate his actions.
>
> (3) The defendant acted under a strong provocation[:]
>
>> As indicated in the facts section, Defendant was the victim of a robbery on the night of the

---

[2] Defendant did not raise this argument on the direct appeal of his sentence.

incident. The victim's death followed immediately there after [sic]. The assault of Mr. Bey was only seconds after that.

A round was fired in Defendant's home and a weapon was pointed at his face.

(4) There were substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense[:]

SAME AS ABOVE

(5) The victim of the defendant's conduct induced or facilitated its commission[:]

SAME AS ABOVE

[(emphasis omitted).]

In addition to counsel's sentencing memorandum, counsel submitted various character letters to the court, emphasized defendant's lack of a significant prior criminal history, noted defendant's remorse and personal growth since the incident, described his strong family and faith-based support system, and argued the events were instigated by Bey, who acted as a catalyst in the dispute. Accordingly, the sentencing court considered both defense counsel's sentencing memorandum and arguments at sentencing, assigning minimal weight to mitigating factors two, three, four, and five. Because counsel clearly advocated these factors, there is no basis for an ineffective assistance claim.

A-3358-23

Second, defendant asserts counsel was ineffective because he failed to argue defendant was only twenty-two at the time of his offense, despite the fact youth was not yet a statutory mitigating factor at the time of sentencing. Defendant's sentencing hearing took place on August 2, 2019. In 2020, the Legislature amended N.J.S.A. 2C:44-1(b) to add mitigating factor fourteen. See L. 2020, c. 110. N.J.S.A. 2C:44-1(b)(14) now states the sentencing court may consider as a mitigating factor the fact "[t]he defendant was under 26 years of age at the time of the commission of the offense."

In State v. Lane, our Supreme Court determined N.J.S.A. 2C:44-1(b)(14) was intended to apply prospectively. 251 N.J. 84, 87-88 (2022). The Court found the Legislature's intent was clear because it stated the law would "take effect immediately" when it adopted N.J.S.A. 2C:44-1(b)(14), which "connotes prospective application." Id. at 96. Lane is dispositive of this issue. The statute as amended is not retroactive and the sentencing court properly did not consider defendant's age at sentencing.

Finally, defendant emphasizes both convictions stemmed from a single episode and maintains counsel should have more forcefully argued for concurrent terms at sentencing. As the PCR court noted, defendant argued the sentences should have run concurrently on appeal of the sentence. We rejected

22

this argument and affirmed the sentence. We must not lose sight of the fact that consecutive sentences were always part of the negotiated plea deal. See State v. S.C., 289 N.J. Super. 61, 71 (App. Div. 1996) ("[A] presumption of reasonableness . . . attaches to criminal sentences imposed on plea bargain defendants." (quoting State v. Sainz, 107 N.J. 283, 294 (1987)) (internal quotation marks omitted)).

As stated, counsel was effective in negotiating a favorable plea. Defendant was offered a sentence that downgraded the second count from a first-degree offense, attempted murder, to a second-degree offense, aggravated assault, with sentencing in the third-degree range, despite the sentencing court's initial doubt regarding the significant downgrade. Defendant cannot accept the advantages of a highly favorable plea agreement predicated on consecutive sentences and then later claim ineffective assistance of counsel for failing to argue the sentences should have run concurrently.

Moreover, when defendants are subject to multiple sentences for more than one offense, the Code of Criminal Justice grants trial courts the discretion to decide whether those sentences should run concurrently or consecutively. N.J.S.A. 2C:44-5(a). To promote sentencing uniformity while preserving a reasonable amount of discretion for the sentencing court, State v. Yarbough, 100

23

N.J. 627 (1985), established guidelines to assist judges in deciding whether to impose concurrent or consecutive sentences. State v. Liepe, 239 N.J. 359, 372 (2019) (citing State v. Carey, 168 N.J. 413, 422 (2001)).

While the guidelines encourage sentencing uniformity, the Court has stressed "that the Yarbough guidelines are just that—guidelines." Carey, 168 N.J. at 427. Therefore, courts should apply the five factual inquiries of Yarbough "qualitatively, not quantitatively." Ibid. "[A] sentencing court may impose consecutive sentences even though a majority of the Yarbough factors support concurrent sentences." Id. at 427-28; see also State v. Perry, 124 N.J. 128, 177 (1991) (upholding imposition of consecutive sentences despite four of Yarbough's five factors militating in favor of concurrent sentences).

As defendant concedes, crimes involving multiple deaths or victims who sustained serious bodily injury are ordinarily appropriately punished by consecutive sentences. Carey, 168 N.J. at 428. The multiple-victims factor of Yarbough is "entitled to great weight and ordinarily should result in the imposition of at least two consecutive terms." Id. at 429. Defendant's argument that the multiple-victims factor should be given little weight because defendant was simply defending himself fails for the reasons already expressed. Both Robinson and Bey were outside, fleeing from defendant with their backs turned,

and Robinson was unarmed, when defendant used deadly force. And the imperfect self-defense argument was successfully employed by his counsel to downgrade count one from first-degree murder to second-degree manslaughter and count two from first-degree attempted murder to second-degree aggravated assault, with sentencing to occur in the third-degree range.

Defendant has not met the second prong of <u>Strickland</u> as applied to plea agreements. Defendant was facing thirty years to life for first-degree murder, ten to twenty years for first-degree attempted murder, and seven separate counts of second-, third-, and fourth-degree offenses. The favorable plea agreement negotiated by trial counsel resulted in a fourteen-year aggregate sentence with less than ten years of parole ineligibility. Defendant has not demonstrated a reasonable likelihood that proceeding to trial on a claim of self-defense would have resulted in a more favorable outcome. Given the seriousness of the charges brought against defendant compared to what he ultimately pleaded to and the unlikeliness of success at trial, defendant has not shown a reasonable probability he would not have plead guilty and would have insisted on going to trial.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Hanley*

Clerk of the Appellate Division

25                                                    A-3358-23